**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| SHANTRICE L. JONES | CIVIL ACTION |
| VERSUS | 18-1034-SDD-EWD |
| SOUTHERN UNIVERSITY, SAGE REHABILITATION OUTPATIENT, LEIGH ANN BAKER, AMELIA MAJOR, DONNA FITZGERALD-DEJEAN, TERRILYN GILLIS, AND ELAINE LEWNAU | |

## RULING

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendant, Dr. Janet Rami ("Dr. Rami"). Plaintiff, Shantrice L. Jones ("Plaintiff"), representing herself *pro se*, has filed an *Opposition*[2] to the motion, to which Dr. Rami filed a *Reply*.[3] For the following reasons, Dr. Rami's motion shall be granted.

### I.  FACTUAL BACKGROUND

Plaintiff, an African-American female and a former student of Southern University A & M College ("Southern"), who filed this lawsuit against Southern, several Southern employees, and other defendants, alleging they have violated a number of federal and state laws. Plaintiff enrolled in Southern in 2015 as a speech pathology graduate

---

[1] Rec. Doc. No. 27.
[2] Rec. Doc. No. 61.
[3] Rec. Doc. No. 72.
52974

Page 1

student.[4] At the time of enrollment, Plaintiff requested unspecified accommodations from Southern based on parenting a special-needs daughter. Southern's response was that it was unaware that Plaintiff was entitled to any such accommodations.[5] Nevertheless, Plaintiff acknowledges that Southern later provided Plaintiff with accommodations in relation to her education.[6]

During the relevant time period, Defendant and Movant herein, Dr. Rami, served as the Dean of the College of Nursing & Allied Health for Southern University.[7] Defendant Leigh Ann Baker ("Baker") was the Director of Clinical Education for Southern,[8] and Plaintiff claims that, in the fall of 2016 and the spring of 2017, Baker acted as though she was superior to Plaintiff, allegedly based on Plaintiff's race.[9] Plaintiff alleges that Baker demonstrated "racially motivated micro aggressive behavior" by correcting a term the Plaintiff used in a conversation and also interrupting the Plaintiff in a conversation.[10] Additionally, Plaintiff claims Baker asked Plaintiff if she had any experience performing hearing screenings but did not ask this same question of a Caucasian student.[11] Baker also allegedly sent Plaintiff emails that Plaintiff describes as "badgering" and "harassing" and wherein Baker "threatened dismissal out of the program."[12]

In Plaintiff's field of study, Southern requires students to earn a certain number of

---

[4] Rec. Doc. No. 16, ¶¶ 14-15.
[5] *Id.*, ¶¶ 16-17.
[6] *Id.*, ¶¶ 20, 144
[7] *Id.*, ¶ 165.
[8] *Id.*, ¶ 4.
[9] *Id.*, ¶ 21.
[10] *Id.*, ¶ 22.
[11] *Id.*, ¶ 19.
[12] *Id.*, ¶¶ 26-27.
52974

clinic hours to graduate.[13] In May 2017, Baker assigned Plaintiff three clinical placements, two of which were on campus and which Plaintiff opposed. Plaintiff believes this was done to interfere with her graduation[14] and demonstrates Baker's bias against African-American students.[15] Because Plaintiff refused to participate in these clinics due to her daughter's care needs, Plaintiff alleges Baker indicated Plaintiff would receive a failing grade and be dropped from the clinic.[16]

The Plaintiff complained about Baker to Southern's student affairs department,[17] and she was advised that Southern was already investigating other student complaints against Baker.[18] Plaintiff was directed to a university committee led by Tavares Walker ("Walker") that was responsible for investigating complaints brought within the speech and language graduate department.[19]

In the fall of 2017, Plaintiff began a clinical placement at Defendant, Sage Rehabilitation Outpatient facility ("Sage") under the supervision of Defendant, Amelia Major ("Major").[20] Plaintiff claims that Baker placing her at Sage was a purposeful effort to sabotage Plaintiff's career goals because Baker knew that Sage maintains a strict attendance policy to which Plaintiff would be unlikely to adhere based on the needs of her daughter.[21] Plaintiff alleges that Major discriminated against her by providing Plaintiff the wrong address for the clinic, inviting white students (but not Plaintiff) to therapist

---

[13] Rec. Doc. No. 24-1 at 2.
[14] *Id.*, ¶ 29.
[15] *Id.*, ¶ 30.
[16] *Id.*, ¶ 31.
[17] *Id.*, ¶¶ 33-35.
[18] *Id.*, ¶ 36.
[19] *Id.*, ¶¶ 52-53.
[20] *Id.*, ¶¶ 40-42, 65.
[21] *Id.*, ¶ 65.
52974

meetings, and critiquing the Plaintiff more strictly than white students.[22]

Plaintiff's attendance at Sage was sparse, allegedly due to the care needs of her daughter. In early November 2017, Major advised that Plaintiff's numerous absences – 9 out of 15 half or missed days – would affect her grade and possibly lead to her dismissal from the clinic.[23] Plaintiff allegedly responded to Major that Major's behavior was similar to that of Baker's, against whom Plaintiff had filed a complaint.[24] Plaintiff then provided Major with Walker's contact information, ostensibly suggesting that Major would also be subject to this investigation.[25]

Later in November 2017, Plaintiff claims she was "lure[d]" to Southern's campus to meet with Southern professors, also named Defendants herein, Dr. Terrilyn Gillis ("Dr. Gillis"), Dr. Elaine Lewnau ("Dr. Lewnau"), and Dr. Donna Fitzgerald-Dejean ("Dr. Fitzgerald").[26] Plaintiff alleges that these professors accused her of being a liar, a forger, and of trying to intimidate Major by giving her Walker's information.[27] Plaintiff further alleges these professors then advised her that she was being discharged from the clinic program at Sage.[28]

Plaintiff subsequently attended another meeting with Dr. Fitzgerald and Dr. Lewnau[29] wherein Dr. Fitzgerald allegedly defamed Plaintiff by stating that Plaintiff had previously threatened to choke Dr. Fitzgerald.[30] Plaintiff further alleges that Dr.

---

[22] *Id.*
[23] *Id.*, ¶¶ 66-67.
[24] *Id.*, ¶ 71.
[25] *Id.*
[26] *Id.*, ¶¶ 78-79. The Court will refer to Dr. Fitzgerald-Dejean as "Dr. Fitzgerald" as Plaintiff refers to this Defendant in this manner throughout her pleadings.
[27] *Id.*, ¶¶ 80-82.
[28] *Id.*, ¶ 83.
[29] *Id.*, ¶¶ 95-96.
[30] *Id.*, ¶ 103.
52974

Fitzgerald and Dr. Lewnau defamed Plaintiff by calling her a liar and by claiming that Plaintiff had given false information to Major.[31]

After filing a retaliation complaint with Southern, Plaintiff then attended another meeting with Dr. Fitzgerald and Lewnau.[32] At this meeting, Plaintiff alleges she was told she would receive a failing grade for her Sage internship, would not receive credit for the hours worked, and would be cited for academic dishonesty.[33] The Plaintiff advised Walker of these events, Walker informed Plaintiff that the investigation was ongoing, and he assured Plaintiff that the Defendants "<u>would not be allowed to take such actions against the plaintiff</u>."[34]

In December 2017, Plaintiff filed an academic grievance against her professors for their alleged treatment of her. Although lacking in specifics, Plaintiff alleges in a wholesale manner that "[t]he defendants" retaliated against her by writing a letter to the registrar's office requesting that it: (1) dismiss Plaintiff from the clinic program; (2) honor the "F" grade she was assigned; (3) suspend her from the Master's Degree program for one year; (4) not allow Plaintiff to enroll in any SECD courses; and administratively remove Plaintiff if she attempts to register for SECD courses.[35] Plaintiff alleges that she was subsequently de-registered from classes and suspended by Dr. Fitzgerald, Dr. Lewnau, Dr. Gillis, and another professor.[36] Plaintiff also alleges that, in later meetings which included Dr. Rami, certain defendants stated they would not abide by the ADA

---

[31] *Id.*, ¶ 106.
[32] *Id.*, ¶¶ 113-18.
[33] *Id.*, ¶ 120.
[34] *Id.*, ¶¶ 121-24 (emphasis in original).
[35] *Id.*, ¶ 133.
[36] *Id.*, ¶ 140.

accommodations being provided to Plaintiff by Southern.[37]

Plaintiff's academic grievance was initially denied, and she appealed to Dr. Rami as Dean of the Department.[38] Plaintiff alleges that Dr. Rami presented the case to the appeal committee,[39] and on February 27, 2018, Dr. Rami informed Plaintiff, in writing, that her appeal had been denied.[40] Plaintiff then appealed her grievance to the Dean of Graduate Studies, Dr. Mohamadian, which was again denied.[41] Plaintiff subsequently appealed to Southern's Vice Chancellor James Ammons ("Ammons"), and on July 5, 2018, Ammons overturned the academic actions of the faculty and granted all of Plaintiff's relief.[42]

Pending the appeal, Plaintiff acknowledges that Southern protected her rights, and she continued to enroll in classes and pursue her degree.[43] Plaintiff claims she received the support of Ammons during the appeal process, who ensured that Plaintiff remained in all of her classes,[44] and Plaintiff continued to receive ADA accommodations.[45] Ultimately, Plaintiff won her appeal; she was awarded all relief requested by Southern; her "F" grade was expunged; and her Sage clinical hours were credited.[46]

Despite this outcome, Plaintiff alleges that Dr. Lewnau responded to the Vice Chancellor's decision by letter dated July 6, 2018, wherein she advised that she and the

---

[37] *Id.*, ¶¶ 144, 148.
[38] *Id.*, ¶ 165.
[39] *Id.*, ¶ 167.
[40] *Id.*, ¶¶ 166-67.
[41] *Id.*, ¶ 174.
[42] *Id.*, ¶ 178.
[43] *Id.*, ¶ 169.
[44] *Id.*, ¶¶ 139-42, 171-73.
[45] *Id.*, ¶ 144.
[46] *Id.*, ¶¶ 176-78.
52974

faculty department were in total disagreement with the grievance response.[47]  Plaintiff claims that the defendants continued to question her about missed appointments for clinical hours and required her to prepare a different presentation than she was originally instructed.[48]  Nevertheless, Plaintiff acknowledges she was allowed to graduate, and she earned her degree.[49]

Notwithstanding her successful appeal and ultimate graduation, Plaintiff filed this lawsuit against Southern, Sage, and related employees, including Dr. Rami, movant herein.[50]  Dr. Rami maintains that her sole role in this litigation is simply that she adjudicated Plaintiff's initial appeal from the denial of her grievance.  Further, Dr. Rami notes that Plaintiff does not allege that Dr. Rami denied the appeal based on Plaintiff's race or the fact that Plaintiff is the mother of a disabled child; likewise, Plaintiff does not allege that Dr. Rami denied her appeal to retaliate against her for filing a Title IX complaint.  Moreover, even if Plaintiff made such allegations, which Dr. Rami denies, Dr. Rami contends Plaintiff has failed to articulate a viable legal theory upon which she can hold Dr. Rami liable as a matter of law.  Plaintiff purportedly asserts a plethora of claims under federal statutes as well as state law, and she seeks compensatory damages, punitive damages, and injunctive relief.[51]  Dr. Rami contends that, in the 202 factual paragraphs of Plaintiff's *Amended Complaint*, Dr. Rami is mentioned in eight, and she claims that none of these eight paragraphs contain allegations that Dr. Rami engaged in conduct with a racial or disability-based bias, much less a retaliatory intent.

---

[47] *Id.*, ¶ 181.
[48] *Id.*, ¶¶ 187-89.
[49] *Id.*, ¶ 190.
[50] Rec. Doc. No. 1.
[51] *Id.*
52974

Further, Dr. Rami contends several of the broadly pled claims do not provide for liability against an individual capacity defendant, such as Plaintiff's Title VI, Title VII, ADA, RA, and Title IX claims. Further, Plaintiff has failed to plead facts to support a state law defamation claim against Dr. Rami. Thus, Dr. Rami moves to dismiss all claims brought against her in both her individual and official capacities. Plaintiff has opposed this motion.

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[52] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[53] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[54] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[55] A complaint is also insufficient if it

---

[52] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[53] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[54] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[55] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).
52974

merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[56] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[57] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[58] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[59] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[60]

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts."[61] A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs."[62] Indeed, "a *pro se* litigant is not 'exempt ... from compliance with the relevant rules of procedural and substantive law.'"[63] A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer."[64]

### C. Plaintiff's Abandoned Claims

First, the Court acknowledges that "*pro se* pleadings are held to less stringent

---

[56] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[57] *Twombly*, 550 U.S. at 570.
[58] *Iqbal*, 556 U.S. at 678.
[59] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[60] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[61] *Kiper v. Ascension Parish Sch. Bd.*, 2015 WL 2451998, *1 (M.D. La. May 21, 2015)(citing *Callahan v. C.I.R.*, Civ. A. 99-0295-C-M1, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)).
[62] *Id.*
[63] *NCO Financial Systems, Inc. v. Harper–Horsley*, No.07–4247, 2008 WL 2277843 at *3 (E.D.La. May 29, 2008), quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981).
[64] *Id.*, citing *Birl*, 660 F.2d at 593.
52974

standards than pleadings drafted by lawyers,"[65] and "*pro se* pleadings must be treated liberally."[66] Nevertheless, "a *pro se* litigant is not 'exempt ... from compliance with the relevant rules of procedural and substantive law.'[67] A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer."[68] Plaintiff has already amended her *Complaint* once in this matter, yet Plaintiff still fails to state a claim upon which relief may be granted.

Although Plaintiff's *Amended Complaint* alleges facts that purportedly trigger a variety of federal statutes, in her *Opposition,* Plaintiff focuses her arguments primarily on defamation and civil conspiracy under 42 U.S.C. §1985, a claim Plaintiff has not pled. The Court notes that "stating a claim" does not simply require the mere recitation of facts Plaintiff alleges to have happened; rather, she must state a claim "upon which relief may be granted," meaning Plaintiff must demonstrate in her *Complaint* and in her *Opposition* to the *Motion to Dismiss* how the facts alleged meet the elements of the federal and state laws under which she claims she is entitled to relief.

Plaintiff does not address the elements of her claims brought under Title VI, Title VII, the ADA, the RA, and Title IX, nor does she argue or demonstrate how the facts pled satisfy her pleading burden. Notwithstanding the fact that Plaintiff lacks any substantive legal entitlement to relief under several of these statutes, Plaintiff's failure to address or oppose asserted claims in her *Opposition* results in the abandonment of those claims.[69]

---

[65] *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972).
[66] *U.S. v. Robinson*, 78 F.3d 172, 174 (5th Cir.1996); *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004).
[67] *NCO Financial Systems, Inc. v. Harper–Horsley,* No.07–4247, 2008 WL 2277843 at *3 (E.D.La. May 29, 2008), quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981).
[68] *Id.*, citing *Birl*, 660 F.2d at 593.
[69] The Court notes in the alternative that the abandoned claims are also substantively without merit based on the allegations of Plaintiff's *Amended Complaint* for the reasons and jurisprudence set forth by Dr. Rami

52974

Accordingly, Plaintiff's purported Title VI claims, Title VII claims, Rehabilitation Act claims, ADA claims, and Title IX claim against Dr. Rami in any capacity are deemed abandoned,[70] and these claims are dismissed with prejudice.

### D. Defamation Claim

In her *Opposition*, Plaintiff cites to the definition of defamation found in 28 U.S.C. §4101;[71] as Dr. Rami notes, this statute applies to foreign judgments and is wholly inapplicable to this case. Plaintiff has purportedly asserted a state law defamation claim against Dr. Rami, which could only arise under Louisiana law. To the extent Plaintiff relies on jurisprudence outside of Louisiana, such cases are inapposite to whether Plaintiff has stated a claim under Louisiana law against Dr. Rami for defamation.

While Plaintiff makes numerous allegations against "the defendants" in wholesale fashion, the allegations made specifically against Dr. Rami contained in Plaintiff's *Amended Complaint* are set forth below:

> Going through the grievance process, the grievance along with the defamation remarks, made by Dr. Fitzgerald and the other defendants were submitted and communicated with other agents, of the Board of Supervisors, Southern University, along with outside contacts, this is

---

in her *Memorandum in Support of Motion to Dismiss*, Rec. Doc. No. 27-1.
[70] *See U.S. ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375 at *7 (S.D. Miss. Mar. 30, 2013)("The Relators did not adequately brief their opposition to the Defendant's Motion to Dismiss Count Three on state law claims of fraud, suppression, and deceit. As such, they have abandoned Count Three. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (concluding that plaintiff's failure to defend her "retaliatory abandonment" claim in response to the defendant's motion to dismiss constituted abandonment of the claim); *Dean v. One Life Am., Inc.*, No. 4:11–CV–203–CWR–LRA, 2013 WL 870352, at *2 (S.D.Miss. Mar. 7, 2013) (holding that by failing to address the defendant's argument in her response, the plaintiff abandoned her claim); *Alexander v. Brookhaven Sch. Dist.*, No. 3:07–CV–640–DPJ–JCS, 2009 WL 224902, at *4 (S.D.Miss. Jan. 28, 2009) (stating that the plaintiff "appears to have abandoned [her Equal Pay Act] claim having not defended it" in her response to the defendant's motion to dismiss), *aff'd*, 428 F. App'x 303 (5th Cir. 2011)).
[71] This statute provides that, "[t]he term 'defamation' means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person."
52974

> documented by the defendant, Mrs. Rami, (See Exhibit M).[72]
>
> . . . The other defendants, Dr. Gillis, and Dr. Rami have been demoted in their position with the board of supervisors, [S]outhern university.[73]
>
> The academic grievance at that time, was sided with the defendants, so the plaintiff appealed the decision and the process went on to the next level which was to the dean, Janet Rami.[74]
>
> Janet Rami states that she presented the issue to outside contacts.[75]

Any references to Dr. Rami contained in wholesale, generalized references to "the defendants" fails to meet the Rule 12(b) pleading standard as a matter of law. Courts within the Fifth Circuit have routinely held that such generalized references to actions by all defendants are insufficient to state a claim.[76] Accordingly, the Court will evaluate only the specific defamation allegations made against Dr. Rami.

The Louisiana Supreme Court has held that defamation is a tort involving "the invasion of a person's interest in his [or her] reputation and good name."[77] Both federal and state courts in Louisiana have held that, "[t]o maintain a defamation action under Louisiana law, a plaintiff must prove the following elements: '(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault

---

[72] Rec. Doc. No. 16, ¶ 145.
[73] *Id.*, ¶ 163.
[74] *Id.*, ¶ 165.
[75] *Id.*, ¶ 166.
[76] *See, e.g., Petri v. Kestrel Oil & Gas Properties, L.P.*, Civil Action Nos. 09-3994, 10-122, 10-497, 2011 WL 2181316, at * 6 (S.D. Tex. June 3, 2011) ("Plaintiffs have improperly lumped all Defendants together in the amended complaint, which is too vague and ambiguous to state a claim and is devoid of particularized and specific allegations against WGMS as to all allegations of negligence, gross negligence and/or malice."); *Howard v. ABN AMRO Mortg. Group, Inc.*, No. 1:13CV543, 2014 WL 1237317, at * 3 (S.D. Miss. March 26, 2014) (explaining that "the Fifth Circuit has provided that '[w]here the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading.' It necessarily follows that the Plaintiff's conclusory allegations against all 'defendants' fail to state a claim upon which relief can be granted as to FHLB and Wells Fargo.") (quoting *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008) (citing *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 165–66 (5th Cir. 1999)).
[77] *Sassone v. Elder*, 626 So.2d 345, 350 (La. 1993).

(negligence or greater) on the part of the publisher; and (4) resulting injury.'"[78] If any single element of the tort is lacking, the cause of action fails.[79] Further, "'[t]he fault requirement is generally referred to in the jurisprudence as malice, actual or implied.'"[80]

In *English v. Wood Group PSN, Inc.*[81] the district court for the Eastern District of Louisiana comprehensively explained what is necessary to state a claim of defamation under Louisiana law:

> To plead facts sufficient to state a cause of action for defamation under Louisiana law, Louisiana courts do not require a quoted statement but do require the plaintiff provide "with reasonable specificity the defamatory statements allegedly published by the defendant." *Badeaux v. Sw. Computer Bureau, Inc.*, 2005–0612 (La.3/17/06), 929 So.2d 1211, 1218 (citing *Fitzgerald*, 737 So.2d at 713); see *Haygood v. Begue*, No. 13–CV–0335, 2014 WL 1316200, at *6 (W.D.La. Mar.31, 2014). In other words, "[i]t is not necessary for a plaintiff to state verbatim the words on which [the plaintiff] bases his cause of action, but he must allege a state of facts or condition of things which would show fault under article 2315." *Badeaux*, 929 So.2d at 1218 The **Louisiana courts also require that the plaintiff "name the individual offenders and allege separate acts of defamation as to each, including specific defamatory statements**." *Id.* at 1218 (citing *Juneau v. Avoyelles Par. Police Jury*, 482 So.2d 1022, 1027 (La.App. 3d Cir.1986)). A Louisiana appellate court has noted that, under the Louisiana law of defamation, "[c]ommunications between a previous employer and a prospective employer ... enjoy a qualified or conditional privilege. Such a communication is not actionable when made in good faith." *Butler v. Folger Coffee Co.*, 524 So.2d 206, 207 n. 1 (La.Ct.App.1988)(citing *Alford v. Georgia–Pacific Corp.*, 331 So.2d 558, 561 (La.App. 1st Cir.1976), writ denied 334 So.2d 427).[82]

Dr. Rami contends that, reading the allegations in Plaintiff's *Amended Complaint*, Plaintiff does not allege whether Dr. Rami made any defamatory statements, what those

---

[78] *Schmidt v. Cal-Drive International, Inc.*, 240 F.Supp.3d 532, 542 (W.D. La. 2017)(quoting *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 674 (La. 2006); *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 181 (5th Cir. 2009)).
[79] *Id.* at 542 (citing Costello v. Hardy, 864 So.2d at 139.
[80] *Id.* (quoting *Kennedy* at 674).
[81] No. 15-568, 2015 WL 5061164 (E.D. La. Aug. 25, 2015).
[82] *Id.* at *16 (emphasis added).
52974

defamatory statements allegedly were, or to whom such statements were published. Further, Plaintiff fails to plead any actual malice on the part of Dr. Rami. Thus, under Louisiana law, Plaintiff's defamation claim, as pled against Dr. Rami, fails.

Plaintiff argues in her *Opposition*, as follows:

The defendant, Janet Rami, agent of the Board of Supervisor, by her own admission published the defamation remarks by discussing with outside parties (other than members of the Board of Supervisors Agency), her admission is in a form that she signs and states that (*See Exhibit M of Complaint*).

The defendant, Janet Rami along with the other members of the Board of Supervisors that are listed as Defendant conspired together to try and make the defamation remarks seem as a joke in an official meeting with other Superior Agents of the Board of Supervisors of Southern. (See Audio of the Meeting - Exhibit I A) ~ This is mentioned in the complaint as evidence to the Malicious intent, by total disregard to the remarks and to try and cover it up to make it seem as a joke.[83]

Plaintiff further argues that Dr. Rami "[h]as use [sic] her authority that was given her to retaliate against the plaintiff Maliciously and neglectanly [sic], by conspiring with others to continue the defamation by publishing it to a third party and then trying to cover the defamation up by stating that it was a joke and she wasn't there when the remark was spoken."[84] Plaintiff essentially argues that Dr. Rami is liable because Dr. Fitzgerald made defamatory statements accusing Plaintiff of forgery, a criminal act, and Dr. Rami repeated Dr. Fitzgerald's allegedly false statements to third parties while having knowledge that such statements were false. The Court notes that the facts argued in Plaintiff's *Opposition* are not found in her *Amended Complaint*, and a party cannot amend pleadings through opposition memoranda. The law is well-settled that arguments in a brief are not a

---

[83] Rec. Doc. No. 63 at 8.
[84] *Id.* at 11.
52974

substitute for properly pleaded allegations: "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."[85]

Further, the Court finds that the statements complained of constitute intra-corporate communications that fail to satisfy the publication element as set forth by a wealth of Louisiana jurisprudence. The allegedly defamatory statements, not originally made by Dr. Rami but allegedly only repeated by her, were made in the context of an internal grievance investigation at Southern University. In *Source Production & Equipment Co., Inc. v. Schehr*, the district court for the Eastern District of Louisiana explained and evaluated this type of communication where a defamation claim was brought under Louisiana law:

> Louisiana appellate courts have held that "an intra-corporate communication among officers or agents of the same corporation, in connection with their duties for the corporation, are a communication of the corporation," not a publication to a third party. *Wisner v. Harvey*, 694 So. 2d 348, 350 (La. App. 1 Cir. 1996) (citing *Commercial Union Ins. Co. v. Melikyan*, 424 So. 2d 1114, 1115 (La. App. 1 Cir. 1982)); *accord Doe v. Grant*, 839 So. 2d 408, 416 (La. App. 4 Cir. 2003); *Bell v. Rogers*, 698 So. 2d 749, 756 (La. App. 2 Cir. 1997). This intra-corporate communication rule is based on *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So. 2d 196 (La. 1980). The plaintiff in *Cangelosi*, who was a cashier, alleged that her supervisors falsely accused her of altering a check. *Id.* at 197. This accusation took place during a meeting with the plaintiff's supervisors. *Id.* Because the only people present were the plaintiff and "supervisory personnel essential to the investigation," the Louisiana Supreme Court held that statements made by these supervisors during the meeting were not published to a third party. *Id.* at 198.[86]

---

[85] *Becnel v. St. Charles Par. Sheriff's Office*, No. 15-1011, 2015 WL 5665060, at *1 n.3 (E.D. La. Sept. 24, 2015) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011)(collecting cases)). Because a Rule 12(b)(6) motion tasks the Court with "assess[ing] the legal sufficiency of the complaint," the Court does not consider allegations that appear for the first time in plaintiffs' briefing. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012).

[86] *Id.* at *2.

52974

The Court finds the allegedly defamatory statements made by Dr. Fitzgerald, and allegedly "repeated" by Dr. Rami, are precisely the same kind of statements that were at issue in *Cangelosi*. Plaintiff has failed to allege that these defamatory statements were made by Dr. Rami outside of the context of the grievance investigation. Accordingly, Plaintiff has failed to plead publication to a third party.

Notwithstanding the other defamation elements, the Court also finds that Plaintiff has failed to allege any actual injury as a result of the alleged defamatory statements. "Although it is true that '[t]he injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, [or] embarrassment and mental anguish,' a plaintiff still 'must present competent evidence of the injuries suffered.'"[87] Plaintiff has failed to allege any injury resulting from the alleged statement "beyond a multitude of conclusory remarks."[88] Indeed, Plaintiff's allegations demonstrate that, despite the alleged defamatory statements, all actions taken against her were eventually reversed, and she was allowed to graduate and earn her degree in her chosen field. Plaintiff has not pled any facts to suggest harm to her general reputation or that the alleged defamation has limited her job opportunities. Accordingly, the Court finds that Plaintiff has failed to state a claim for defamation against Dr. Rami.

### E. Retaliation Claims

Plaintiff makes several references to retaliation and retaliatory discrimination in her *Opposition*. To the extent Plaintiff has any viable claims for retaliation under the relevant statutes, Dr. Rami cannot be held liable in her individual capacity as the ADA

---

[87] *Sanders v. Dillard University*, No. 14-845, 2014 WL 7342440 at *8 (E.D. La. Dec. 23, 2014)(quoting *Costello*, 2003–1146 at 14; 864 So.2d at 141).
[88] *Id.*

52974

and the RA prohibit discrimination and retaliation by "a public entity."[89] The public entity subject to liability under these statutes is Southern University, which Plaintiff has sued in this lawsuit for the same relief, and the Court has previously dismissed. Any suit against Dr. Rami in her official capacity as an employee or representative of Southern University is a suit against Southern University itself.[90] The Court previously dismissed Plaintiff's retaliation claims against Southern under the same theories asserted herein. Therefore, any retaliation claims against Dr. Rami in any capacity are dismissed with prejudice for the reasons set forth herein and previously in the Court's *Ruling* granting Southern's *Motion to Dismiss*.[91]

### III.  CONCLUSION

Accordingly, Defendant Dr. Rami's *Motion to Dismiss*[92] is GRANTED. Plaintiff's claims against Dr. Rami are dismissed with prejudice.[93]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>August 15, 2019</u>.

                */s/ Shelly D. Dick*
                **CHIEF JUDGE SHELLY D. DICK**
                **UNITED STATES DISTRICT COURT**
                **MIDDLE DISTRICT OF LOUISIANA**

---

[89] 42 U.S.C. § 12132.
[90] *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985)(citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)).
[91] Rec. Doc. No. 83.
[92] Rec. Doc. No. 27.
[93] Plaintiff has already once amended her *Complaint* and does not seek leave to amend in her *Opposition*. The Court finds that further attempts to amend would be futile as a matter of fact and law.
52974