## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**SHANTRICE L. JONES**                          **CIVIL ACTION NO.**

**VERSUS**                                            **18-1034-SDD-EWD**

**SOUTHERN UNIVERSITY, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 27, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**SHANTRICE L. JONES**                                    **CIVIL ACTION NO.**

**VERSUS**                                                        **18-1034-SDD-EWD**

**SOUTHERN UNIVERSITY, ET AL.**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Motion to Dismiss[1] filed by defendants, Donna Fitzgerald-Dejean ("Dr. Fitzgerald"),[2] Elaine Lewnau ("Dr. Lewnau"), Terrilynn Gillis ("Dr. Gillis"), and Christy Wynn Moland ("Moland") (collectively, the "Southern Professor Defendants"). Shantrice Jones ("Plaintiff"), who is representing herself, filed an Opposition[3] to the Motion to Dismiss. For the reasons set forth herein, it is recommended[4] that the Motion to Dismiss be granted, and that Plaintiff's claims against the Southern Professor Defendants be dismissed with prejudice.

## I.    BACKGROUND[5]

Plaintiff, an African-American female and a former student of Southern University A & M College ("Southern"), filed this lawsuit against Southern,[6] several Southern employees,[7] and

---

[1] R. Doc. 60.

[2] The Court will refer to Dr. Fitzgerald-Dejean as "Dr. Fitzgerald" to avoid confusion as this is the way Plaintiff refers to this defendant.

[3] R. Doc. 78.

[4] On January 22, 2020, all pending dispositive motions in the suit were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), Federal Rule of Civil Procedure 72(b), and Local Civil Rule 72(b) to "prepare findings of fact, conclusions of law and a report and recommendation…" R. Doc. 94.

[5] The Court previously ruled on several motions to dismiss in this case. *See* R. Docs. 83, 84, 85. The "Factual Background" sections from those rulings are adopted verbatim with minor modifications relevant to Plaintiff's claims against the Southern Professor Defendants.

[6] Plaintiff properly sued the Board of Supervisors of Southern University A & M College.

[7] These include the Southern Professor Defendants, plus the defendants, Leigh Ann Baker ("Baker") and Dr. Janet Rami ("Dr. Rami"). Plaintiff's claims against Baker and Rami were previously dismissed by the Court. *See* R. Docs. 84, 85.

other defendants, alleging they have violated several federal and state laws. Plaintiff enrolled in Southern in 2015 as a speech pathology graduate student.[8] At the time of enrollment, Plaintiff requested unspecified accommodations from Southern based on parenting a special-needs daughter. Southern's response was that it was unaware that Plaintiff was entitled to any such accommodations.[9] Nevertheless, Plaintiff acknowledges that Southern later provided Plaintiff with accommodations in relation to her education.[10]

During the relevant time period, the Southern Professor Defendants worked for Southern in the following capacities: (1) Dr. Fitzgerald was a professor and the Acting Chair of the speech and language department,[11] (2) Dr. Lewnau was a professor and the Graduate Program Director for the speech and language department,[12] (3) Dr. Gillis was an assistant professor and Plaintiff's academic/faculty advisor,[13] and (4) Moland was an assistant professor and academic advisor.[14] Baker was the Director of Clinical Education for Southern,[15] and Plaintiff claims that, in the fall of 2016 and the spring of 2017, Baker acted as though she was superior to Plaintiff, allegedly based on Plaintiff's race.[16] Plaintiff alleges that Baker demonstrated "racially motivated micro aggressive behavior" by correcting a term the Plaintiff used in a conversation and also interrupting the Plaintiff in a conversation.[17] Additionally, Plaintiff claims Baker asked Plaintiff

---

[8] R. Doc. 16, ¶¶ 14-15.

[9] *Id.* at ¶¶ 16-17.

[10] *Id.* at ¶¶ 20, 144.

[11] *Id.* at ¶ 7. *See also* R. Doc. 60-2, p. 5.

[12] R. Doc. 16, ¶ 6. *See also* R. Doc. 60-2, p. 5.

[13] R. Doc. 16, ¶ 8. *See also* R. Doc. 60-2, p. 5.

[14] R. Doc. 16, ¶ 9. At some point, Moland became the Interim Director of Clinical Education for Southern. R. Doc. 60-2, p.5.

[15] R. Doc. 16, ¶ 4.

[16] *Id.* at ¶ 21.

[17] *Id.* at ¶ 22.

if she had any experience performing hearing screenings but did not ask this same question of a Caucasian student.[18] Baker also allegedly sent Plaintiff emails that Plaintiff describes as "badgering" and "harassing" and wherein Baker "threatened dismissal out of the program."[19]

In Plaintiff's field of study, Southern requires students to earn a certain number of clinic hours to graduate.[20] In May 2017, Baker assigned Plaintiff three clinical placements, two of which were on campus and which Plaintiff opposed. Plaintiff believes this was done to interfere with her graduation[21] and demonstrates Baker's bias against African-American students.[22] Because Plaintiff refused to participate in these clinics due to her daughter's care needs, Plaintiff alleges Baker indicated Plaintiff would receive a failing grade and be dropped from the clinic.[23]

The Plaintiff complained about Baker to Southern's student affairs department,[24] and she was advised that Southern was already investigating other student complaints against Baker.[25] Plaintiff was directed to a university committee led by Tavares Walker ("Walker") that was responsible for investigating complaints brought within the speech and language graduate department.[26]

In the fall of 2017, Plaintiff began a clinical placement at defendant, Sage Rehabilitation Outpatient facility ("Sage") under the supervision of defendant, Amelia Major ("Major").[27]

---

[18] *Id.* at ¶ 19.

[19] *Id.* at ¶¶ 26-27.

[20] Rec. Doc. No. 24-1, p. 2.

[21] *Id.* at ¶ 29.

[22] *Id.* at ¶ 30.

[23] *Id.* at ¶ 31.

[24] *Id.* at ¶¶ 33-35.

[25] *Id.* at ¶ 36.

[26] *Id.* at ¶¶ 52-53.

[27] *Id.* at ¶¶ 40-42, 65.

Plaintiff contends Baker and Major were friends,[28] and Plaintiff claims that Baker placing her at Sage was a purposeful effort to sabotage Plaintiff's career goals because Baker knew that Sage maintains a strict attendance policy to which Plaintiff would be unlikely to adhere based on the needs of her daughter.[29] Plaintiff alleges that Major discriminated against her by providing Plaintiff the wrong address for the clinic, inviting white students (but not Plaintiff) to therapist meetings, and critiquing the Plaintiff more strictly than white students.[30]

Plaintiff's attendance at Sage was sparse, allegedly due to the care needs of her daughter. In early November 2017, Major advised that Plaintiff's numerous absences – 9 out of 15 half or missed days – would affect her grade and possibly lead to her dismissal from the clinic.[31] Plaintiff allegedly responded to Major that Major's behavior was similar to that of Baker's, against whom Plaintiff had filed a complaint.[32] Plaintiff then provided Major with Walker's contact information, ostensibly suggesting that Major would also be subject to this investigation.[33]

Later in November 2017, Plaintiff claims she was "lure[d]" to Southern's campus to meet with most of the Southern Professor Defendants, including Dr. Gillis, Dr. Lewnau, and Dr. Fitzgerald.[34] Plaintiff alleges that these professors accused her of being a liar, a forger, and of trying to intimidate Major by giving her Walker's information.[35] Plaintiff further alleges these professors then advised her that she was being discharged from the clinic program at Sage.[36]

---

[28] *Id.* at ¶ 42.

[29] *Id.* at ¶ 65.

[30] *Id.*

[31] *Id.* at ¶¶ 66-67.

[32] *Id.* at ¶ 71.

[33] *Id.*

[34] *Id.* at ¶¶ 78-79.

[35] *Id.* at ¶¶ 80-82.

[36] *Id.* at ¶ 83.

Plaintiff subsequently attended another meeting with Dr. Fitzgerald and Dr. Lewnau[37] wherein Dr. Fitzgerald allegedly defamed Plaintiff by stating that Plaintiff had previously threatened to choke Dr. Fitzgerald.[38] Plaintiff further alleges that Dr. Fitzgerald and Dr. Lewnau defamed Plaintiff by calling her a liar and by claiming that Plaintiff had given false information to Major.[39]

After filing a retaliation complaint with Southern, Plaintiff then attended another meeting with Dr. Fitzgerald and Dr. Lewnau.[40] At this meeting, Plaintiff alleges she was told she would receive a failing grade for her Sage internship, would not receive credit for the hours worked, and would be cited for academic dishonesty.[41] The Plaintiff advised Walker of these events, Walker informed Plaintiff that the investigation was ongoing, and he assured Plaintiff that the Defendants "would not be allowed to take such actions against the plaintiff."[42]

In December 2017, Plaintiff filed an academic grievance against her professors for their alleged treatment of her.[43] Although lacking in specifics, Plaintiff alleges in a wholesale manner that "[t]he defendants" retaliated against her by writing a letter to the registrar's office requesting that it:  (1) dismiss Plaintiff from the clinic program; (2) honor the "F" grade she was assigned; (3) suspend her from the Master's Degree program for one year; (4) not allow Plaintiff to enroll in any SECD courses; and (5) administratively remove Plaintiff if she attempts to register for

---

[37] *Id*. at ¶¶ 95-96.

[38] *Id*. at ¶ 103.

[39] *Id.* at ¶ 106.

[40] *Id*. at ¶¶ 113-18.

[41] *Id.* at ¶ 120.

[42] *Id*. at ¶¶ 121-24 (emphasis in original).

[43] *Id*. at ¶ 127.

SECD courses.[44] Plaintiff alleges that she was subsequently de-registered from classes and suspended by the Southern Professor Defendants.[45] Plaintiff also alleges that, in later meetings, certain defendants stated they would not abide by the ADA accommodations being provided to Plaintiff by Southern.[46]

Plaintiff's academic grievance was initially denied, and she appealed.[47] Pending the appeal, Plaintiff acknowledges that Southern protected her rights, and she continued to enroll in classes and pursue her degree.[48] Plaintiff claims she received the support of Southern's Vice Chancellor James Ammons ("Ammons") during the appeal process, who ensured that Plaintiff remained in all of her classes,[49] and Plaintiff continued to receive ADA accommodations.[50] Ultimately, Plaintiff won her appeal; she was awarded all relief she requested from Southern; her "F" grade was expunged; and her Sage clinical hours were credited.[51]

Despite this outcome, Plaintiff alleges that Dr. Lewnau responded to the Vice Chancellor's decision by letter dated July 6, 2018, wherein she advised that she and the faculty department were in total disagreement with the grievance response.[52] Plaintiff claims that the defendants continued to question her about missed appointments for clinical hours and required her to prepare a different presentation than she was originally instructed.[53] Nevertheless, Plaintiff

---

[44] *Id.* at ¶ 133.

[45] *Id.* at ¶ 140.

[46] *Id.* at ¶¶ 144, 148.

[47] *Id*. at¶ 165.

[48] *Id*. at ¶ 169.

[49] *Id*. at ¶¶ 139-42, 171-73.

[50] *Id*. at ¶ 144.

[51] *Id*. at ¶¶ 176-78.

[52] *Id.* at ¶ 181-182.

[53] *Id*. at ¶¶ 187-89.

acknowledges she was allowed to graduate and earned her degree.[54]

Notwithstanding her successful appeal and ultimate graduation, Plaintiff filed this lawsuit against Southern, Sage, and related employees, including the Southern Professor Defendants.[55] Plaintiff purportedly asserts a plethora of claims under federal statutes as well as state law, and she seeks compensatory damages, punitive damages, and injunctive relief.[56]  Southern previously moved to dismiss Plaintiff's Complaint on its own behalf and on behalf of its former and current employees named as defendants.[57]  Thereafter, Plaintiff filed an Amended Complaint[58] ostensibly asserting claims under Titles VI and VII of the Civil Rights Act of 1964;[59] Section 504 of the Rehabilitation Act ("RA"), and Title II of the Americans with Disabilities Act ("ADA").[60] Separate counsel was engaged to represent the Southern Professor Defendants, Baker and Dr. Rami.  The Southern Professor Defendants now move to dismiss all claims brought against them in their individual and official capacities.

## II.    LAW AND ANALYSIS

### A.    Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[61] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference,

---

[54] *Id*. at ¶ 190.

[55] Rec. Doc. No. 1.

[56] *Id.*

[57] Rec. Doc. No. 17.

[58] Rec. Doc. No. 16.

[59] 42 U.S.C. § 2000e *et seq*.

[60] 42 U.S.C.A. § 12101 *et seq*.

[61] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

and matters of which a court may take judicial notice."[62] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[63] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[64] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[65] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[66] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[67] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[68] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[69]

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment

---

[62] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[63] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

[64] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted).

[65] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted).

[66] *Twombly*, 550 U.S. at 570.

[67] *Iqbal*, 556 U.S. at 678.

[68] *Taha v. William Marsh Rice University*, No. 11-2060, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[69] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

afforded *pro se* plaintiffs by the courts."[70] A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs."[71]  Indeed, "a *pro se* litigant is not 'exempt…from compliance with the relevant rules of procedural and substantive law.'[72] A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer."[73]

### B.    Plaintiff's Abandoned Claims

First, the Court acknowledges that "*pro se* pleadings are held to less stringent standards than pleadings drafted by lawyers,"[74] and "*pro se* pleadings must be treated liberally."[75] Nevertheless, "a *pro se* litigant is not 'exempt…from compliance with the relevant rules of procedural and substantive law.'[76] A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer."[77] Plaintiff has already amended her Complaint once in this matter, yet Plaintiff still fails to state a claim upon which relief may be granted.

Although Plaintiff's Amended Complaint alleges facts that purportedly trigger a variety of federal statutes,[78] Plaintiff's five-page Opposition is "woefully lacking" regarding most (if not all) of her claims.[79] While Plaintiff is not required to prove her allegations at the pleadings stage; however, she "must provide a reasonable foundation for the facts alleged and must respond to a

---

[70] *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)).

[71] *Id.*

[72] *NCO Financial Systems, Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) *quoting Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981).

[73] *Id.*, citing *Birl*, 660 F.2d at 593.

[74] *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

[75] *U.S. v. Robinson*, 78 F.3d 172, 174 (5th Cir.1996); *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004).

[76] *NCO Financial Systems*, 2008 WL 2277843, at *3 *quoting Birl*, 660 F.2d at 593 (5th Cir.1981).

[77] *Id.*, citing *Birl*, 660 F.2d at 593.

[78] *See, e.g.*, R. Doc. 16, ¶¶ 1-4 (pp. 6-7), 1-13 (pp. 10-13), 194-200.

[79] *See Reed v. Gautreaux*, No. 19-130, 2019 WL 6051107, at * (M.D. La. Nov. 15, 2019).

dispositive motion by pointing the Court to allegations which support the elements of the claims asserted."[80] Plaintiff fails to discuss the elements of any of the claims – federal or state – asserted against the Southern Professor Defendants. Indeed, Plaintiff references no law in the "Argument" section of her Opposition.[81] Further, Plaintiff neither cites to, nor references by name, any statute on which her claims are purportedly based.[82] At most, Plaintiff vaguely addresses only claims for retaliation under Title VI, conspiracy, and defamation.[83] "Stating a claim" does not simply require the mere recitation of facts Plaintiff alleges to have happened; rather, she must state a claim "upon which relief may be granted," meaning Plaintiff must demonstrate in her Amended Complaint and in her Opposition to the Motion to Dismiss how the facts alleged meet the elements of the federal and state laws under which she claims she is entitled to relief.

Plaintiff's failure to address or oppose asserted claims in her Opposition results in the abandonment of those claims.[84] Accordingly, it is recommended that Plaintiff's purported non-retaliation-based Title VI claims, Title VII claims, Rehabilitation Act claims, non-retaliation ADA

---

[80] *Id.*

[81] R. Doc. 78, pp. 3-5. The only law cited in the entirety of Plaintiff's Opposition is the standard on deciding motions to dismiss under Rule 12(6)(b). *Id.* at pp. 2-3.

[82] *See, generally*, R. Doc. 78.

[83] R. Doc. No. 78, p. 4 (objecting that the Southern Professor Defendants are attempting to "re-state allegations that border on thresholds and base elements deficiencies," and that they are "twisting and contorting statements and claims only to complicate and overwhelm the pro se plaintiff, into forcing her along a path for defeat, by mere redundancy and murky unsupported defense arguments"); *id.* at p. 3 (arguing that the Southern Professor Defendants "(ALONG WITH OTHER DEFENDANTS) did conspire together to unlawfully harm, damage the plaintiff," and that their assertion that Plaintiff's claims "do not meet[] certain elements for defamation…is factually incorrect") (emphasis in original)); *id.* at pp. 4-5 (arguing that "[i]ndividuals working for entities funded by federal tax money, public/private entities, and their related, affiliated sub or co-entity, interning students [*i.e.,* all defendants]…collectively, and in collusion with one another and perhaps in a systematic manner, did cause unlawful harm, damage to the plaintiff, while in the process did defame and retaliate against the plaintiff, all actionable offenses and a violation of plaintiff's constitutional rights). Plaintiff did not plead a civil conspiracy or any constitutional violations in her Amended Complaint. *See, generally*, R. Doc. 16.

[84] The Court notes in the alternative that the abandoned claims are also substantively without merit based on the allegations of Plaintiff's Amended Complaint for the reasons and jurisprudence set forth (1) in Subsections II(D) – (G) below, (2) by the Southern Professor Defendants in their Memorandum in Support of their Motion to Dismiss (R. Doc. 60-2), and (3) by Southern in its Memorandum in Support of Southern's Renewed and Superseding Motion to Dismiss Under Rules 12(b)(1) and (6) (R. Doc. No. 24-1).

claims, Title IX claim, and state law defamation claims be deemed abandoned[85] as against the Southern Professor Defendants and dismissed with prejudice.

### C.    Plaintiff's Title VI and Title IX Claims

The Southern Professor Defendants move to dismiss the individual capacity claims brought against them under Title VI and Title IX, arguing that there is no individual liability under either statute.[86] They are correct. In *Gebser v. Lago Vista Indep. Sch. Dist.*,[87] the Supreme Court recognized the similarities between Title VI and Title IX, noting that the two statutes "operate in the same manner."[88] For this reason, jurisprudence interpreting one statute is applicable to the other.[89]

The Fifth Circuit has explicitly declared that there is no individual liability under Title VI and Title IX:  "Title VI permits suits only against public or private entities receiving funds and not against individuals."[90] The Fifth Circuit held similarly with respect to Title IX, stating: "Liability under Title IX does not extend to school officials, teachers and other individuals."[91]

---

[85] *See U.S. ex rel. Woods v. SouthernCare, Inc.*, No. 09-313, 2013 WL 1339375, at *7 (S.D. Miss. Mar. 30, 2013)("The Relators did not adequately brief their opposition to the Defendant's Motion to Dismiss Count Three on state law claims of fraud, suppression, and deceit. As such, they have abandoned Count Three. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (concluding that plaintiff's failure to defend her "retaliatory abandonment" claim in response to the defendant's motion to dismiss constituted abandonment of the claim); *Dean v. One Life Am., Inc.*, No. 11–203, 2013 WL 870352, at *2 (S.D.Miss. Mar. 7, 2013) (holding that by failing to address the defendant's argument in her response, the plaintiff abandoned her claim); *Alexander v. Brookhaven Sch. Dist.*, No. 07–640, 2009 WL 224902, at *4 (S.D.Miss. Jan. 28, 2009) (stating that the plaintiff "appears to have abandoned [her Equal Pay Act] claim having not defended it" in her response to the defendant's motion to dismiss), *aff'd*, 428 F. App'x 303 (5th Cir. 2011)).

[86] R. Doc. 60-2, at pp. 8-10.

[87] 524 U.S. 274, 286 (1998).

[88] *Id*.

[89] *See Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 628 n.14 (N.D. Tex. May 18, 2017).

[90] *Muthukumar v. Kiel*, 478 Fed. Appx. 156, 159 (5th Cir. 2012).

[91] *Plummer v. Univ. of Houston*, 860 F.3d 767, 783 n.12 (5th Cir. 2017). *See also Hundall v. Univ. of Texas at El Paso*, No. 13-0365, 2014 WL 12496895, at *15 n.23 (W.D. Tex. Feb. 21, 2014) (collecting cases) (Title IX); *Kirk v. Monroe City Sch. Bd.*, No. 17-1466, 2018 WL 4292355, at *4–5 (W.D. La. Aug. 24, 2018), *report and recommendation adopted*, No. CV 17-1466, 2018 WL 4291750 (W.D. La. Sept. 7, 2018) (dismissing Title VI and Title IX claims against individual defendants).

As there is no individual liability under Title VI or Title IX, it is recommended that these claims brought against the Southern Professor Defendants in their individual capacities be dismissed with prejudice.

### D.    Plaintiff's Title VII Claims

Plaintiff's Title VII claims must also be dismissed. Not only is individual liability unavailable under Title VII,[92] Title VII prohibits discrimination in employment based on protected characteristics including, among other things, race and gender.[93] Plaintiff has not alleged that any of the Southern Professor Defendants ever employed Plaintiff or that they would qualify as an "employer" under Title VII.  As such, Title VII is wholly inapplicable to the facts alleged in this case. Accordingly, it is recommended that Plaintiff's Title VII claims against the Southern Professor Defendants be dismissed with prejudice.

### E.    Plaintiff's ADA and RA Discrimination and Retaliation Claims

The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[94] The ADA also protects individuals from retaliation for opposing any act that is illegal under the ADA or for participating in any investigation, proceeding or hearing under the ADA.[95] To establish a *prima facie* case for retaliation, a Plaintiff must show: (1) a protected activity; (2)

---

[92] *See Baldwin v. Layton*, 300 F. App'x 321, 323 (5th Cir. 2008) ("Individuals are not liable under Title VII in either their individual or official capacities."); *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002)(same); *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir.1994); *Kiper*, 2015 WL 2451998, at *2; *Jarvis v. Circle K Stores*, No. 13-825, 2015 WL 1809228, at *4 (M.D. La. Apr. 21, 2015).

[93] 42 U.S.C. § 2000e-2.

[94] 42 U.S.C. § 12132.

[95] 42 U.S.C. § 12203.

an adverse action; and (3) a causal connection between the two.[96] Cases interpreting Section 504 of the RA and Title II of the ADA apply generally to both statutes.[97]

As with several other statutes Plaintiff invoked, individuals cannot be held personally liable for violations of the ADA or RA.[98] Accordingly, it is recommended that all individual capacity claims asserted against the Southern Professor Defendants under the ADA and the RA be dismissed with prejudice.

### F.    Official Capacity Claims

Plaintiff sued each of the Southern Professor Defendant in both their individual and official capacities. As set forth by this Court in its previous Rulings in this case, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."[99] Official-capacity suits are nothing more than a "way of pleading an action against an entity of which an officer is an agent."[100]

All allegations of the Southern Professor Defendants' conduct in connection with Plaintiff's claims took place while they were employees of Southern and were functioning in their

---

[96] *Ariel B. et rel. Deborah B. v. Fort Bend Independent School Dist.*, 428 F.Supp.2d 640, 665 (S.D. Tex. April 20, 2006) (citation omitted).

[97] *PlainsCapital Bank v. Keller Indep. Sch. Dist.*, 746 F. App'x 355, 358 (5th Cir. 2018).

[98] *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir.1999) (holding that government officials cannot be sued in their individual capacities under Section 504); *Burns v. E. Baton Rouge Par. Prison Emergency Med. Servs.*, No. 14-0245, 2016 WL 1122242, at *5 (M.D. La. Mar. 4, 2016), *report and recommendation adopted*, No. 14-245, 2016 WL 1189335 (M.D. La. Mar. 22, 2016)("[b]ecause the term 'public entity' in Title II does not include individuals, individual defendants cannot be held personally liable for violations of Title II of the ADA."); *Decker v. Dunbar*, 633 F.Supp.2d 317, 357 (E.D. Tex. Sept. 29, 2008), *aff'd*, 358 F. App'x 509 (5th Cir. 2009)(recognizing that "the Fifth Circuit has held that there is no individual liability in lawsuits under the Rehabilitation Act … there is likewise no individual liability for claims of violations under [Title II] of the ADA."); *Willis v. Lacox*, No. 10-108, 2012 WL 441198, at *8 (E.D. Tex. Feb. 10, 2012)(dismissing claims under the Rehabilitation Act and Title II of the ADA brought against individual defendants "because there is no individual liability under the ADA or the RA…").

[99] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)).

[100] *Id.*

official capacities for Southern.[101] Because an official capacity suit against the Southern Professor Defendants is essentially a suit against Southern, and Southern has been named as a defendant in this matter, Plaintiff cannot maintain official capacity claims against the Southern Professor Defendants under any theories asserted.[102] Further, the Court has dismissed Plaintiff's claims against Southern in a previous Ruling for Plaintiff's failure to state a claim under those statutes.[103] Accordingly, it is recommended that all official capacity claims asserted against the Southern Professor Defendants be dismissed with prejudice.

### G.    Defamation Claims under Louisiana Law

Both federal and state courts in Louisiana have held that, "[t]o maintain a defamation action under Louisiana law, a plaintiff must prove the following elements: '(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.'"[104] If any single element of the tort is lacking, the cause of action fails.[105] Further, "'[t]he fault requirement is generally referred to in the jurisprudence as malice, actual or implied.'"[106]

### 1.    Plaintiff's Allegations of Defamation in the Amended Complaint

While Plaintiff makes numerous allegations against "the defendants" in wholesale

---

[101] *See, e.g.*, R. Doc. No. 16, ¶¶ 6-9, 11, 78-82, 87 ("Dr. Fitzgerald, is an agent/employee of the Board of Supervisors, Southern University…"), 89, 96-98, 120, 127-129, 138 ("The defendants, agents of the [B]oard of Supervisors, Southern University, Dr. Lewnau, Dr. Fitzgerald, Dr. Gillis, and Dr. Moland…"), 147, 152, 157, 182-183.

[102] *See, Lehmann v. Hill County*, No. 09-086, 2009 WL 10669158, at *1 (W.D. Tex. June 24, 2009)("[W]hen a suit is brought against an entity and an individual in his official capacity, it is proper to dismiss the suit against the individual in his official capacity, leaving the entity as a defendant.).

[103] *See* R. Doc. No. 83.

[104] *Schmidt v. Cal-Drive International, Inc.*, 240 F.Supp.3d 532, 542 (W.D. La. March 6, 2017)(quoting *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 674 (La. 2006); *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 181 (5th Cir. 2009)).

[105] *Id.* at 542 (citing *Costello v. Hardy*, 864 So.2d at 139).

[106] *Id.* (quoting *Kennedy* at 674).

fashion, the allegations of defamation made specifically against the Southern Professor

Defendants contained in Plaintiff's Amended Complaint are set forth below:

> The defendants [Dr. Gillis, Dr. Lewnau, and Dr. Fitzgerald] accused the plaintiff, as being a liar, a forger (by creating falsified documents), and an intimidator…[107]

> The defendants, Mrs. Lewnau, Mrs. Fitzgerald, and Mrs. Gillis, under the guise of Board of Supervisors, Southern University authority, stated that because the plaintiff gave defendant, Amelia Major, the letter [sic] Mr. Walker's contact information, she falsified the document for one, and that the plaintiff was attempting to intimidate defendant, Amelia Major.[108]

> The defendant, Dr. Lewnau, stated that all the information contained in the letter that was presented to defendant, Amelia Major, by the plaintiff was false, and since that was the case, the plaintiff had violated an ethical issue. (Audio Recording is Available – Transcription available later).[109]

> During the interrogation, the defendants [Dr. Fitzgerald and Dr. Lewnau] defamed the plaintiff.[110]

> Dr. Fitzgerald defamed the plaintiff, by stating that the plaintiff and her was involved in a near violent conversation, regarding a failing grade, which lead to the plaintiff threatening or implying that she was going to choke the defendant, - The plaintiff has never had a failing grade from Dr. Fitzgerald.[111]

> The defendant, Dr. Fitzgerald concocted this story out of malice to make and portray that the plaintiff was a violence [sic] and unwilling person. This is a completely false statement and the defendant, Dr. Fitzgerald was aware of the false nature of the statement when she made it but was making it to paint a derogatory image of the plaintiff.[112]

> Knowing that the story or statement that the [sic] she just stated would be carried on to other people, Dr. Fitzgerald maliciously made the story seem true, due to her authority status within the [B]oard of [S]upervisor[s], [S]outhern [U]niversity.[113]

---

[107] R. Doc. 16, at ¶ 80. Plaintiff alleges these defamatory comments were made in a meeting between Plaintiff and Dr. Gillis, Dr. Lewnau, and Dr. Fitzgerald. *Id.* at ¶¶ 78-80.

[108] *Id.* at ¶ 82.

[109] *Id.* at ¶ 100.

[110] *Id.* at ¶ 102.

[111] *Id.* at ¶ 103.

[112] *Id.* at ¶ 104.

[113] *Id.* at ¶ 105.

The defendants, both Dr. Lewnau and Dr. Fitzgerald, defamed the plaintiff, by stating that she was a liar and had falsified the documentation that she had presented to Amelia Major. The defendants had informed Amelia Major that the information the plaintiff provided to her was false and concocted.[114]

The defendant, Dr. Fitzgerald attacked the character of the plaintiff, and spitefully tried to portray the plaintiff as a hostile and violent person. The person in which the defendant, Dr. Fitzgerald was referring to in this meeting will provide a statement if necessary to prove that it was not the plaintiff.[115]

The defendants, agents of the Board of Supervisors, Southern, Dr. Lewnau, Dr. Fitzgerald, Dr. Gillis, and Dr. Moland responses to the grievance by restating the defamation remarks stated above into the response of the grievance. By stating these falsehoods about the plaintiff, the adverse opinion of the plaintiff has been formed and created an image that is detrimental to the progress of the plaintiff.[116]

Going through the grievance process, the grievance along with the defamation remarks, made by Dr. Fitzgerald and the other defendants were submitted and communicated with other agents, of the Board of Supervisors, Southern University, along with outside contacts, this is documented by the defendant, Mrs. Rami, (See Exhibit M).[117]

These contacts were not agents of the [B]oard of [S]upervisors, Southern University.[118]

During these meeting [sic]…Mrs. Fitzgerald admitted that she made the story up about the incident and was joking when she mentioned the choking episode, (All of this is on Audio recording and will be transcribed later).[119]

During these times and shortly after. . .defendants Leigh Baker, Amelia Major, Dr. Fitzgerald and Dr. Moland no longer are employed by the board of supervisors, southern university…The other defendants, Dr. Gillis, and Dr. Rami have been demoted in their position with the [B]oard of [S]upervisors, [S]outhern [U]niversity.[120]

---

[114] *Id*. at ¶ 106.

[115] *Id*. at ¶ 107. Plaintiff's allegation is unclear as to whether this defamatory comment was made about Plaintiff or another person, but, for the purposes of this Report and Recommendation, the Court will assume this comment was made about Plaintiff.

[116] *Id*. at ¶ 138. This is single allegation appears to be the basis for Plaintiff's claim for defamation against Moland.

[117] *Id*. at ¶ 145.

[118] *Id*. at ¶ 146.

[119] *Id*. at ¶ 148.

[120] *Id.* at ¶ 163.

Any references to the Southern Professor Defendants contained in wholesale, generalized references to "the defendants" fails to meet the Rule 12(b) pleading standard as a matter of law. Courts within the Fifth Circuit have routinely held that such generalized references to actions by all defendants are insufficient to state a claim.[121] Accordingly, the Court will evaluate only the specific defamation allegations made against Dr. Lewnau, Dr. Fitzgerald, Dr. Gillis, and Moland.

### 2. Plaintiff's Defamation Claims Against Dr. Lewnau and Dr. Fitzgerald

The Louisiana Supreme Court has held that defamation is a tort involving "the invasion of a person's interest in his [or her] reputation and good name."[122] Both federal and state courts in Louisiana have held that, "[t]o maintain a defamation action under Louisiana law, a plaintiff must prove the following elements: '(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.'"[123] If any single element of the tort is lacking, the cause of action fails.[124] Further, "'[t]he fault requirement is generally referred to in the jurisprudence as malice, actual or implied.'"[125]

---

[121] *See, e.g., Petri v. Kestrel Oil & Gas Properties, L.P.*, Civil Action Nos. 09-3994, 10-122, 10-497, 2011 WL 2181316, at * 6 (S.D. Tex. June 3, 2011) ("Plaintiffs have improperly lumped all Defendants together in the amended complaint, which is too vague and ambiguous to state a claim and is devoid of particularized and specific allegations against WGMS as to all allegations of negligence, gross negligence and/or malice."); *Howard v. ABN AMRO Mortg. Group, Inc.*, No. 13-543, 2014 WL 1237317, at * 3 (S.D. Miss. March 26, 2014) (explaining that "the Fifth Circuit has provided that '[w]here the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading.' It necessarily follows that the Plaintiff's conclusory allegations against all 'defendants' fail to state a claim upon which relief can be granted as to FHLB and Wells Fargo.") (quoting *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008) (citing *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 165–66 (5th Cir. 1999)).

[122] *Sassone v. Elder*, 626 So.2d 345, 350 (La. 1993).

[123] *Schmidt*, 240 F.Supp.3d at 542 quoting *Kennedy*, 935 So.2d at 674 (La. 2006); *Henry*, 566 F.3d at 181.

[124] *Id.* at 542 (citing *Costello v. Hardy*, 864 So.2d at 139).

[125] *Id.* (quoting *Kennedy* at 674).

The court in *English v. Wood Group PSN, Inc.*[126] comprehensively explained what is necessary to state a claim of defamation under Louisiana law:

> To plead facts sufficient to state a cause of action for defamation under Louisiana law, Louisiana courts do not require a quoted statement but do require the plaintiff provide "with reasonable specificity the defamatory statements allegedly published by the defendant." *Badeaux v. Sw. Computer Bureau, Inc*., 2005–0612 (La. 3/17/06), 929 So.2d 1211, 1218 (citing *Fitzgerald*, 737 So.2d at 713); *see Haygood v. Begue*, No. 13–CV–0335, 2014 WL 1316200, at *6 (W.D. La. Mar.31, 2014). In other words, "[i]t is not necessary for a plaintiff to state verbatim the words on which [the plaintiff] bases his cause of action, but he must allege a state of facts or condition of things which would show fault under article 2315." *Badeaux*, 929 So.2d at 1218 **The Louisiana courts also require that the plaintiff "name the individual offenders and allege separate acts of defamation as to each, including specific defamatory statements**." *Id*. at 1218 (citing *Juneau v. Avoyelles Par. Police Jury*, 482 So.2d 1022, 1027 (La.App. 3d Cir. 1986)). A Louisiana appellate court has noted that, under the Louisiana law of defamation, "[c]ommunications between a previous employer and a prospective employer ... enjoy a qualified or conditional privilege. Such a communication is not actionable when made in good faith." *Butler v. Folger Coffee Co*., 524 So.2d 206, 207 n. 1 (La.Ct.App.1988)(citing *Alford v. Georgia–Pacific Corp*., 331 So.2d 558, 561 (La.App. 1st Cir.1976), *writ denied* 334 So.2d 427).[127]

Dr. Lewnau and Dr. Fitzgerald contend that, reading the allegations in Plaintiff's Amended Complaint, Plaintiff failed to set forth the defamatory statements made by the defendants and purportedly published with reasonable certainty, and that Plaintiff's "mere formulaic recitation of the falsity and malice elements…cannot survive a motion to dismiss."[128] They also contend that all allegedly defamatory statements were made by and among individuals within the same entity – here, Southern – so Plaintiff cannot satisfy the publication element of defamation.[129] Finally, Dr. Lewnau and Dr. Fitzgerald argue that, assuming Plaintiff could establish all other elements of a

---

[126] No. 15-568, 2015 WL 5061164 (E.D. La. Aug. 25, 2015).

[127] *Id.* at *16 (emphasis added).

[128] R. Doc. 60-2, at p. 12.

[129] *Id*. at pp. 12-13.

*prima facie* defamation claim, Plaintiff's claims still fail because she "failed to allege any injury as a result of the alleged defamatory statements."[130]

Instead of explaining how her allegations establish the elements of a defamation claim or responding to the Southern Professor Defendants' arguments, Plaintiff in her Opposition simply states that "DeJean[-Fitzgerald], Lewnau**,** Gillis, Moland, (ALONG WITH OTHER NAMED DEFENDANTS) did conspire together to unlawfully harm, damage plaintiff,"[131] and that the "defendant[s] collectively, and in collusion with one another and perhaps in a systematic manner, did cause unlawful harm, damage to the plaintiff, while in the process did defame and retaliate against the plaintiff…"[132]

Dr. Lewnau and Dr. Fitzgerald are correct; Plaintiff's allegations – after considering them in the light most favorable to Plaintiff, who is acting *pro se* – are insufficient to state a claim for defamation. Further, the Court finds that the statements complained of constitute intra-corporate communications that fail to satisfy the publication element as set forth by a wealth of Louisiana jurisprudence. The allegedly defamatory statements were made in the context of professors, academic advisors, and/or department chairs discussing the coursework and related issues of a student in their department and/or an internal grievance investigation at Southern University.  In *Source Production & Equipment Co., Inc. v. Schehr*, the court explained and evaluated this type of communication where a defamation claim was brought under Louisiana law:

> Louisiana appellate courts have held that "an intra-corporate communication among officers or agents of the same corporation, in connection with their duties for the corporation, are a communication of the corporation," not a publication to a third party. *Wisner v. Harvey*, 694 So. 2d 348, 350 (La. App. 1 Cir. 1996) (citing *Commercial Union Ins. Co. v. Melikyan*, 424 So. 2d 1114, 1115 (La. App. 1 Cir. 1982)); *accord Doe v. Grant*, 839 So. 2d 408, 416 (La. App. 4 Cir. 2003); *Bell v.*

---

[130] *Id*. at p. 13.

[131] R. Doc. 78, at p. 3 (emphasis in original).

[132] *Id*. at p. 5.

*Rogers*, 698 So. 2d 749, 756 (La. App. 2 Cir. 1997). This intra-corporate communication rule is based on *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So. 2d 196 (La. 1980). The plaintiff in *Cangelosi*, who was a cashier, alleged that her supervisors falsely accused her of altering a check. *Id.* at 197. This accusation took place during a meeting with the plaintiff's supervisors. *Id.* Because the only people present were the plaintiff and "supervisory personnel essential to the investigation," the Louisiana Supreme Court held that statements made by these supervisors during the meeting were not published to a third party. *Id.* at 198.[133]

The Court finds the allegedly defamatory statements made by Dr. Fitzgerald and/or Dr. Lewnau, and allegedly "repeated" by them (and Dr. Gillis and/or Moland) in response to Plaintiff's grievance, are precisely the same kind of statements that were at issue in *Cangelosi*. Plaintiff has failed to allege that these defamatory statements were made by Dr. Fitzgerald or Dr. Lewnau outside of the context of overseeing a student's coursework or a grievance investigation with other professors, administrators and employees of Southern. Accordingly, Plaintiff has failed to plead publication to a third party.

Notwithstanding the other defamation elements, the Court also finds that Plaintiff has failed to allege any actual injury as a result of the alleged defamatory statements. "Although it is true that '[t]he injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, [or] embarrassment and mental anguish,' a plaintiff still 'must present competent evidence of the injuries suffered.'"[134] Plaintiff has failed to allege any injury resulting from the alleged statement "beyond a multitude of conclusory remarks."[135] Indeed, Plaintiff's allegations demonstrate that, despite the alleged defamatory statements, all actions taken against her were eventually reversed, and she was allowed to graduate and earn her degree in her chosen field. Plaintiff has not pled any facts to suggest harm to her

---

[133] *Id.* at *2.

[134] *Sanders v. Dillard University*, No. 14-845, 2014 WL 7342440, at *8 (E.D. La. Dec. 23, 2014) *quoting Costello*, 864 So.2d at 141.

[135] *Id.*

general reputation or that the alleged defamation has limited her job opportunities. The Court finds that Plaintiff has failed to state a claim for defamation against Dr. Fitzgerald or Dr. Lewnau. Accordingly, it is recommended that Plaintiff's claims for defamation against Dr. Fitzgerald and Dr. Lewnau be dismissed with prejudice.

### 3. Plaintiffs' Defamation Claims Against Moland

Plaintiff alleges a single instance of defamation by Moland. Plaintiff alleges that Moland, along with the other Southern Professor Defendants, "restat[ed] the defamation remarks" when they responded to an academic grievance filed by Plaintiff with Southern.[136] Plaintiff's defamation claim against Moland fails for several reasons. First, the allegations against Moland are contained in a single wholesale, generalized reference to the Southern Professor Defendants.[137] As noted above, this allegation is insufficient to state a claim specifically against Moland. Second, Plaintiff's claim against Moland fails for the same reasons Plaintiff's claims against Dr. Rami, Baker, and Dr. Lewnau and Dr. Fitzgerald failed.[138] Accordingly, it is recommended that Plaintiff's claim for defamation against Moland be dismissed with prejudice.

---

[136] R. Doc. 16, ¶¶ 136-138. Despite attaching fourteen exhibits (*i.e.*, Exhibits A-N) to the Amended Complaint, it does not appear that Plaintiff attached the Southern Professor Defendant's response to the academic grievance she filed. While Exhibit N purports to be an incomplete copy of a "Response to Grievance" from Dr. Rami, who has been dismissed (R. Doc. 84), to Plaintiff, it does not reference the Southern Professor Defendants. Likewise, it does not reference any of the statements Plaintiff claims are defamatory. *See* R. Doc. 16, at Exhibit N.

[137] *Id*. at ¶ 138.

[138] *See* Subsection II(G)(2) above, R. Doc. 84, pp. 11-16, and R. Doc. 85.

#### 4.    Plaintiff's Defamation Claims Against Dr. Gillis

Like her allegations against Moland, Plaintiff's specific, non-generalized defamation allegations against Dr. Gillis are sparse. Specifically, Plaintiff alleges that she was "lured" to a meeting with Dr. Gillis, Dr. Lewnau, and Dr. Fitzgerald, and that "the defedants accused [her] as being a liar, a forger…and an intimidator."[139] Plaintiff also alleges that the "defendants" using their authority from Southern accused Plaintiff of falsifying the document she gave to Major and attempting to intimidate Major.[140] Plaintiff further alleges that Dr. Gillis, along with the other Southern Professor Defendants, "restat[ed] the defamation remarks" when they responded to an academic grievance filed by Plaintiff with Southern.[141] Plaintiff's claims against Dr. Gillis fail for all the same reasons that her claims against Moland failed;[142] thus, it is recommended that Plaintiff's claim for defamation against Dr. Gillis be dismissed with prejudice.

## III.    CONCLUSION

For the reason set forth herein, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED** and all Plaintiff's claims against Donna Fitzgerald-Dejean, Elaine Lewnau, Terrilynn Gillis, and Christy Wynn Moland be **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on February 27, 2020.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[139] R. Doc. 16, ¶¶ 78-80.

[140] *Id*. at ¶ 82.

[141] R. Doc. 16, at ¶¶ 136-138. Despite attaching fourteen exhibits (*i.e.*, Exhibits A-N) to the Amended Complaint, it does not appear that Plaintiff attached the Southern Professor Defendant's response to the academic grievance she filed. While Exhibit N purports to be an incomplete copy of a "Response to Grievance" from Dr. Rami, who has been dismissed (R. Doc. 84), to Plaintiff, it does not reference the Southern Professor Defendants. Likewise, it does not reference any of the statements Plaintiff claims are defamatory. *See* R. Doc. 16, at Exhibit N.

[142] *See* Subsection II(G)(3) above.