# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

SHANTRICE L. JONES                          CIVIL ACTION NO.

VERSUS                                      18-1034-SDD-EWD

SOUTHERN UNIVERSITY, ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 3, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

SHANTRICE L. JONES                              CIVIL ACTION NO.

VERSUS                                          18-1034-SDD-EWD

SOUTHERN UNIVERSITY, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss,[1] filed by defendant Care Plan Oversight, LLC d/b/a Sage Rehabilitation Hospital ("Sage").[2] Shantrice Jones ("Plaintiff"), who is representing herself, filed an opposition memorandum[3] to the Motion to Dismiss. For the reasons that follow it is recommended[4] that the Motion to Dismiss be granted, and that Plaintiff's claims against Sage be dismissed with prejudice.  It is also recommended that Plaintiff's claims against Amelia Major be dismissed on the Court's own motion pursuant to Local Civil Rule 41(b)(1)(A) and/or Local Civil Rule 41(b)(1)(B) with reinstatement of the claims against Major permitted upon a showing of good cause within thirty (30) days.  There is no service information in the record as to Major, nor has Major appeared.

## I.    BACKGROUND[5]

Plaintiff, an African American female and a former student of Southern University A &

---

[1] R. Doc. 44.

[2] Throughout Plaintiff's Amended Complaint (R. Doc. 16) and in opposition to Sage's Motion to Dismiss (R. Doc. 45), Plaintiff refers to Sage at various times as Sage, Sage Rehabilitation Outpatient, Care Plan Oversight, LLC, and the Carpenter Health Network, LLC d/b/a Sage Rehabilitation Outpatient.

[3] R. Doc. 45.

[4] On January 22, 2020, all pending dispositive motions in the suit were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), Federal Rule of Civil Procedure 72(b), and Local Civil Rule 72(b) to "prepare findings of fact, conclusions of law and a report and recommendation…" R. Doc. 94.

[5] The Court previously ruled on several motions to dismiss in this case. *See* R. Docs. 83, 84, 85. The "Factual Background" section from those Rulings is adopted verbatim with minor modifications relevant to Plaintiff's claims against Sage.

M College ("Southern"), filed this lawsuit against Southern,[6] several Southern employees, and other defendants, including Sage, alleging that the defendants violated several federal and state laws. Plaintiff enrolled in Southern in 2015 as a speech pathology graduate student.[7] At the time of enrollment, Plaintiff requested unspecified accommodations from Southern based on parenting a special-needs daughter. Southern's response was that it was unaware that Plaintiff was entitled to any such accommodations.[8] Nevertheless, Plaintiff acknowledges that Southern later provided Plaintiff with accommodations in relation to her education.[9]

During the relevant time period, Defendant Leigh Ann Baker ("Baker") was the Director of Clinical Education for Southern,[10] and Plaintiff claims that, in the fall of 2016 and the spring of 2017, Baker acted as though she was superior to Plaintiff, allegedly based on Plaintiff's race.[11] Plaintiff alleges that Baker demonstrated "racially motivated micro aggressive behavior" by correcting a term the Plaintiff used in a conversation and also interrupting the Plaintiff in a conversation.[12] Additionally, Plaintiff claims Baker asked Plaintiff if she had any experience performing hearing screenings but did not ask this same question of a Caucasian student.[13] Baker also allegedly sent Plaintiff emails that Plaintiff describes as "badgering" and "harassing" and wherein Baker "threatened dismissal out of the program."[14]

---

[6] Plaintiff properly sued the Board of Supervisors of Southern University A & M College.

[7] R. Doc. 16, ¶¶ 14-15.

[8] *Id.* at ¶¶ 16-17.

[9] *Id*. at ¶¶ 20, 144.

[10] *Id*. at ¶ 4. Plaintiff alleges in conclusory fashion that Baker was also an employee of Sage. *Id*. at ¶¶ 4, 42, 65; *see also* R. Doc. 45, p. 2 ("During the Discovery Process the plaintiff has learned the Defendants (Leigh Ann Baker & Amelia Major) were employees of Care Plan, Oversight, LLC. At the time of the alleged actions.")

[11] R. Doc. 16, ¶ 21.

[12] *Id.* at ¶ 22.

[13] *Id*. at ¶ 19.

[14] *Id*. at ¶¶ 26-27.

In Plaintiff's field of study, Southern requires students to earn a certain number of clinic hours to graduate.[15] In May 2017, Baker assigned Plaintiff three clinical placements, two of which were on campus and which Plaintiff opposed. Plaintiff believes this was done to interfere with her graduation[16] and demonstrates Baker's bias against African-American students.[17] Because Plaintiff refused to participate in these clinics due to her daughter's care needs, Plaintiff alleges Baker indicated Plaintiff would receive a failing grade and be dropped from the clinic.[18]

The Plaintiff complained about Baker to Southern's student affairs department,[19] and she was advised that Southern was already investigating other student complaints against Baker.[20] Plaintiff was directed to a university committee led by Tavares Walker ("Walker") that was responsible for investigating complaints brought within the speech and language graduate department.[21]

In the fall of 2017, Plaintiff began a clinical placement at Sage under the supervision of defendant, Amelia Major ("Major").[22] Plaintiff contends Baker and Major were friends,[23] and Plaintiff claims that Baker placing her at Sage was a purposeful effort to sabotage Plaintiff's career goals because Baker knew that Sage maintains a strict attendance policy to which Plaintiff would be unlikely to adhere based on the needs of her daughter.[24] Plaintiff alleges that Major

---

[15] Rec. Doc. No. 24-1, p. 2.

[16] *Id*. at ¶ 29.

[17] *Id*. at ¶ 30.

[18] *Id*. at ¶ 31.

[19] *Id*. at ¶¶ 33-35.

[20] *Id*. at ¶ 36.

[21] *Id*. at ¶¶ 52-53.

[22] *Id*. at ¶¶ 40-42, 65.

[23] *Id*. at ¶ 42.

[24] *Id.* at ¶ 65.

discriminated against her by providing Plaintiff the wrong address for the clinic, inviting white students (but not Plaintiff) to therapist meetings, and critiquing the Plaintiff more strictly than white students.[25]

Plaintiff's attendance at Sage was sparse, allegedly due to the care needs of her daughter. In early November 2017, Major advised that Plaintiff's numerous absences – 9 out of 15 half or missed days – would affect her grade and possibly lead to her dismissal from the clinic.[26] Major requested that Plaintiff provide specific documentation for each absence from that point forward.[27] Plaintiff allegedly responded to Major that Major's behavior was similar to that of Baker's, against whom Plaintiff had filed a complaint.[28] Plaintiff then provided Major with Walker's contact information, ostensibly suggesting that Major would also be subject to this investigation.[29] Plaintiff claims she spoke with Major's "supervisor/director," who, according to Plaintiff, "knew nothing of what [Major] had stated in the email to the [P]laintiff."[30]

Later in November 2017, Plaintiff claims she was "lure[d]" to Southern's campus to meet with Southern professors, also named as defendants herein, Dr. Terrilyn Gillis ("Dr. Gillis"), Dr. Elaine Lewnau ("Dr. Lewnau"), and Dr. Donna Fitzgerald-Dejean ("Dr. Fitzgerald").[31] Plaintiff

---

[25] *Id*.

[26] *Id*. at ¶¶ 66-67. Plaintiff alleges she initially received an email from Major stating: "It has come to the attention of my director who is recently back from maternity leave, that your schedule is unusual for a student. I know the reasoning is legitimate when it come[s] to your daughter, but we have been very accommodating these last few weeks. Of the last 15 days, you have been allowed 9 days of either late arrivals, absences, or half days. Even with an excuse, this is more than we have ever allowed a student before it affected their grade, or they were asked to leave the clinic." *Id*. at ¶ 67; *see also* R. Doc. 16-1, p. 14.

[27] *Id*. at ¶ 69.

[28] *Id*. at ¶ 71.

[29] *Id*.

[30] *Id*. at ¶ 72.

[31] *Id*., ¶¶ 78-79. The Court will refer to Dr. Fitzgerald-Dejean as "Dr. Fitzgerald" as Plaintiff refers to this defendant in this manner throughout her pleadings. During the relevant time period, the following defendants worked for Southern in the following capacities: (1) Dr. Fitzgerald was a professor and the Acting Chair of the speech and language department, (2) Dr. Lewnau was a professor and the Graduate Program Director for the speech and language department, (3) Dr. Gillis was an assistant professor and Plaintiff's academic/faculty advisor, and (4) Christy Wynn

alleges that these professors accused her of being a liar, a forger, and of trying to intimidate Major by giving her Walker's information.[32] Plaintiff further alleges these professors then advised her that she was being discharged from the clinic program at Sage.[33]

Plaintiff subsequently attended another meeting with Dr. Fitzgerald and Dr. Lewnau[34] wherein Dr. Fitzgerald allegedly defamed Plaintiff by stating that Plaintiff had previously threatened to choke Dr. Fitzgerald.[35] Plaintiff further alleges that Dr. Fitzgerald and Dr. Lewnau defamed Plaintiff by calling her a liar and by claiming that Plaintiff had given false information to Major.[36]

After filing a retaliation complaint with Southern, Plaintiff then attended another meeting with Dr. Fitzgerald and Dr. Lewnau.[37] At this meeting, Plaintiff alleges she was told she would receive a failing grade for her Sage internship, would not receive credit for the hours worked, and would be cited for academic dishonesty.[38] The Plaintiff advised Walker of these events. Walker informed Plaintiff that the investigation was ongoing, and he assured Plaintiff that the Defendants "would not be allowed to take such actions against the plaintiff."[39]

In December 2017, Plaintiff filed an academic grievance against her professors for their alleged treatment of her.[40] Although lacking in specifics, Plaintiff alleges in a wholesale manner

---

Moland ("Moland") was an assistant professor and academic advisor. *Id*. at ¶¶ 6-9; R. Doc. 60-2, p. 5.  Together Dr. Fitzgerald, Dr. Gillis, Dr. Lewnau and Moland are the "Southern Professor Defendants."

[32] R. Doc. 16, ¶¶ 80-82.

[33] *Id.* at ¶ 83.

[34] *Id*. at ¶¶ 95-96.

[35] *Id*. at ¶ 103.

[36] *Id.* at ¶ 106.

[37] *Id*. at ¶¶ 113-18.

[38] *Id.* at ¶ 120.

[39] *Id*. at ¶¶ 121-24 (emphasis in original).

[40] *Id*. at ¶ 127.

that "[t]he defendants" retaliated against her by writing a letter to the registrar's office requesting that it:  (1) dismiss Plaintiff from the clinic program; (2) honor the "F" grade she was assigned; (3) suspend her from the Master's Degree program for one year; (4) not allow Plaintiff to enroll in any SECD courses; and (5) administratively remove Plaintiff if she attempts to register for SECD courses.[41] Plaintiff alleges that she was subsequently de-registered from classes and suspended by the Southern Professor Defendants.[42] Plaintiff also alleges that, in later meetings, certain defendants stated they would not abide by the ADA accommodations being provided to Plaintiff by Southern.[43]

Plaintiff's academic grievance was initially denied, and she appealed.[44] Pending the appeal, Plaintiff acknowledges that Southern protected her rights, and she continued to enroll in classes and pursue her degree.[45] Plaintiff claims she received the support of Southern's Vice Chancellor James Ammons ("Ammons") during the appeal process, who ensured that Plaintiff remained in all of her classes,[46] and Plaintiff continued to receive ADA accommodations.[47] Ultimately, Plaintiff won her appeal; she was awarded all relief she requested from Southern; her "F" grade was expunged; and her Sage clinical hours were credited.[48]

Despite this outcome, Plaintiff alleges that Dr. Lewnau responded to the Vice Chancellor's decision by letter dated July 6, 2018, wherein she advised that she and the faculty

---

[41] *Id.* at ¶ 133.

[42] *Id.* at ¶ 140.

[43] *Id.* at ¶¶ 144, 148.

[44] *Id*. at¶ 165.

[45] *Id*. at ¶ 169.

[46] *Id*. at ¶¶ 139-42, 171-73.

[47] *Id*. at ¶ 144.

[48] *Id*. at ¶¶ 176-78.

department were in total disagreement with the grievance response.[49] Plaintiff claims that the defendants continued to question her about missed appointments for clinical hours and required her to prepare a different presentation than she was originally instructed.[50] Nevertheless, Plaintiff acknowledges she was allowed to graduate and earned her degree.[51]

Notwithstanding her successful appeal and ultimate graduation, Plaintiff filed this lawsuit against Southern, Sage, and related employees.[52] Plaintiff purportedly asserts a plethora of claims under federal statutes as well as state law, and she seeks compensatory damages, punitive damages, and injunctive relief.[53] Plaintiff then filed an Amended Complaint[54] against the defendants ostensibly asserting claims under Titles VI and VII of the Civil Rights Act of 1964;[55] Section 504 of the Rehabilitation Act ("RA"), and Title II of the Americans with Disabilities Act ("ADA").[56] Via the Motion to Dismiss, Sage moves to dismiss all claims brought against it.

## II.    LAW AND ANALYSIS

### A.    Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[57] The court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference,

---

[49] *Id.* at ¶ 181-182.

[50] *Id.* at ¶¶ 187-89.

[51] *Id.* at ¶ 190.

[52] Rec. Doc. No. 1.

[53] *Id.*

[54] Rec. Doc. No. 16.

[55] 42 U.S.C. § 2000e *et seq.*

[56] 42 U.S.C.A. § 12101 *et seq.*

[57] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

and matters of which a court may take judicial notice."[58] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[59] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[60] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[61] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[62] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[63] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[64] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[65] "A liberal reading of plaintiff's pleadings is the only special treatment afforded *pro*

---

[58] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[59] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d at 467).

[60] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).

[61] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").

[62] *Twombly*, 550 U.S. at 570.

[63] *Iqbal*, 556 U.S. at 678.

[64] *Taha v. William Marsh Rice University*, No. 11-2060, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[65] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

*se* plaintiffs by the courts."[66] A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs."[67] Indeed, "a *pro se* litigant is not 'exempt…from compliance with the relevant rules of procedural and substantive law.'[68] A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer."[69] Plaintiff has already amended her Complaint once in this matter, yet Plaintiff still fails to state a claim upon which relief may be granted.

### B.    Plaintiff's Abandoned Claims

Although Plaintiff's Amended Complaint alleges facts that purportedly trigger a variety of federal statutes,[70] in her opposition memorandum, Plaintiff addresses only claims for retaliation under Title VI and the ADA[71] and "respondeat superior" for the purported actions of Baker and Major.[72]

 "Stating a claim" does not simply require the mere recitation of facts Plaintiff alleges to have happened; rather, she must state a claim "upon which relief may be granted," meaning Plaintiff must demonstrate in her Amended Complaint and in her opposition memorandum how the facts alleged meet the elements of the federal and state laws under which she claims she is entitled to relief.

---

[66] *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)).

[67] *Id.*

[68] *NCO Financial Systems, Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) *quoting Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981).

[69] *Id*. (citing *Birl*, 660 F.2d at 593).

[70] *See, e.g.*, R. Doc. 16, ¶¶ 1-4 (pp. 6-7), 1-13 (pp. 10-13), 194-200.

[71] R. Doc. 45, p. 20 (objecting that Sage has distorted her claims and affirming that the "main concept" is retaliation); *id*. at 13-18 (arguing in favor of a retaliation claim under Title VI); *id*. at 18-20 (arguing in favor of a retaliation claim under the ADA).

[72] R. Doc. 61, pp. 12-13 (arguing that Sage is liable under the doctrine of *respondeat superior* for the actions of its employees, who were acting in the course and scope of their employment with Sage, when they "devise[d] a scheme to derail the plaintiff and with the plan caused injuries to [P]laintiff beyond repair").

Plaintiff's failure to address or oppose asserted claims in her opposition memorandum results in the abandonment of those claims.[73] Accordingly, it is recommended that Plaintiff's purported non-retaliation-based Title VI and ADA claims, as well as her Title VII, Title IX, Rehabilitation Act and state law defamation claims against Sage be deemed abandoned[74] and dismissed with prejudice.

### C.    Title VI Retaliation Claim

Plaintiff argues that she has asserted a retaliation claim under Title VI. Title VI's implementing regulations prohibit the recipient of federal funds from retaliating against any individual who makes a complaint or participates in an investigation under Title VI.[75] To establish a *prima facie* case of unlawful retaliation, Plaintiff must show: "(1) that she engaged in protected activity, (2) that she suffered a material adverse action, and (3) that a causal link exists between the protected activity and the adverse action."[76] A "causal link" is established when the evidence demonstrates that the employer's adverse employment decision was based in part on

---

[73] The Court notes in the alternative that the abandoned claims are also substantively without merit based on the allegations of Plaintiff's Amended Complaint for the reasons and jurisprudence set forth herein, as well as in Sage's Memorandum in Support of its Motion to Dismiss. R. Doc. 44-1. *See also* the Court's Ruling dismissing all claims against Southern. R. Doc. 83.

[74] *See U.S. ex rel. Woods v. SouthernCare, Inc.*, No. 09-313, 2013 WL 1339375, at *7 (S.D. Miss. Mar. 30, 2013) ("The Relators did not adequately brief their opposition to the Defendant's Motion to Dismiss Count Three on state law claims of fraud, suppression, and deceit. As such, they have abandoned Count Three. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (concluding that plaintiff's failure to defend her "retaliatory abandonment" claim in response to the defendant's motion to dismiss constituted abandonment of the claim); *Dean v. One Life Am., Inc.*, No. 11–203, 2013 WL 870352, at *2 (S.D.Miss. Mar. 7, 2013) (holding that by failing to address the defendant's argument in her response, the plaintiff abandoned her claim); *Alexander v. Brookhaven Sch. Dist.*, No. 07–640, 2009 WL 224902, at *4 (S.D.Miss. Jan. 28, 2009) (stating that the plaintiff "appears to have abandoned [her Equal Pay Act] claim having not defended it" in her response to the defendant's motion to dismiss), *aff'd*, 428 F. App'x 303 (5th Cir. 2011)).

[75] *Bisong v. University of Houston*, 493 F.Supp.2d 896, 911 (S.D. Tex. 2007) (citing 34 C.F.R. § 100.7(e). *See also Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003)).

[76] *Id.* (citing *Peters*, 327 F.3d at 320; *see also Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (retaliation under Age Discrimination in Employment Act)).

knowledge of the employee's protected activity.[77] To demonstrate a causal link, Plaintiff "must show that the defendant knew about the plaintiff's protected activity."[78]

Sage accurately argues that Plaintiff must bring her Title VI action against Sage, not an individual defendant like Major. "Only public and private entities can be held liable under Title VI."[79] "[I]ndividuals are not liable under Title VI."[80] As to Plaintiff's claims against Sage, Sage argues that Plaintiff must allege that an "appropriate person" at Sage with authority to remedy a Title VI violation had actual knowledge of the retaliatory conduct and responded to it with deliberate indifference.[81] Sage maintains that Plaintiff's own allegations belie her claim under Title VI. First, the employees of Sage are not the "appropriate persons" subject to Title VI liability as a matter of law. Second, the law requires that someone other than the alleged wrongdoer(s) knew of the retaliation and refused to act.[82]

Plaintiff has failed, twice, to identify an actor at Sage who had knowledge of the purportedly discriminatory and/or retaliatory conduct and refused to act on Plaintiff's behalf.

---

[77] *Id.* (citations omitted). Although it has not been established that Plaintiff was an employee of Sage, the cases decided under Title VII are applicable to Plaintiff's Title VI claims. A court's "inquiry into intentional race [or national origin] discrimination is essentially the same for individual actions brought under…Title VI and Title VII." *Id.* at 904-905 (citing *Baldwin v. Univ. of Tex. Medical Branch at Galveston*, 945 F.Supp. 1022, 1031 (S.D. Tex. 1996), *aff'd*, 122 F.3d 1066, 1997 WL 464467 (5th Cir. 1997)). *See also Washington v. Jackson State Univ.*, 532 F.Supp.2d 804, 810 (S.D. Miss. 2006) ("The burden of proof in a Title VI case is the same as that for Title VII and other civil rights statutes.").

[78] *Id.* (citing *Manning v. Chevron Chemical Co.*, 332 F.3d 874, 883 (5th Cir. 2003), *cert. denied*, 540 U.S. 1107 (2004)).

[79] R. Doc. 44-1, p. 4 (citing *Price v. Louisiana Dept. of Educ.*, 329 F. App'x 559, 561 (5th Cir. 2009)). *See also Price v. Housing Authority of New Orleans*, No. 01-3016, 2003 WL 22038409, at *2 (citing *Jackson v. Katy Independent School Dist.*, 951 F.Supp. 1293, 1298 (S.D.Tex. 1999) ("Title VI sets forth a remedy against an entity not an individual.")).

[80] *Id.*

[81] R. Doc. 44-1 (quoting, *e.g., Doan v. Bd. of Sup'rs of La. State Univ.*, No. 17-3471, 2017 WL 4960266, at *2 (E.D. La. Nov. 1, 2017). *See also Kirk v. Monroe City Sch. Bd.*, No. 17-1466, 2018 WL 4292355, at *9 (W.D. La. Aug. 24, 2018) (applying the same test to retaliation claims under Title VI), *report and recommendation adopted*, No. 17-1466, 2018 WL 4291750 (W.D. La. Sept. 7, 2018), appeal filed, Oct. 9, 2018.)(internal quotation marks omitted).

[82] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998).

Rather, Plaintiff's allegations show that no appropriate person at Sage had knowledge of any allegedly discriminatory or retaliatory conduct. Indeed, Plaintiff alleges that she spoke with Major's "supervisor/director" at Sage about Major's email,[83] and the director "to the shock of [P]laintiff knew nothing of what the defendant, Amelia Major had stated in the e-mail to the [P]laintiff."[84] Likewise, in her opposition memorandum, Plaintiff explains that the director "informed" Plaintiff during this conversation that the director "was not aware" of (1) the email from Major to Plaintiff or (2) who the [P]laintiff was." [85]At no point does Plaintiff allege that she addressed Major's purportedly discriminatory or retaliatory conduct with Major's director or any other appropriate person at Sage.

Even assuming Plaintiff had alleged that an appropriate person at Sage had the requisite knowledge, Plaintiff still fails to allege that this person responded with deliberate indifference. As Sage points out, Plaintiff's claim is that "ultimately her departure from the clinical practicum at [Sage] was related to her absences and alleged retaliation by Southern faculty and staff due to Plaintiff's complaints against those faculty and staff."[86] However, there are no allegations that an employee of Sage – much less an appropriate person – refused to act on Plaintiff's behalf. Plaintiff's Amended Complaint shows that Southern faculty and staff – not Sage – removed Plaintiff from her clinical practicum at Sage.[87]

---

[83] *See* footnote 26 *supra*, which sets forth the contents of Major's email.

[84] R. Doc. 16, ¶ 72.

[85] R. Doc. 45, p. 8, ¶ e.

[86] R. Doc. 44-1, p. 4.

[87] R. Doc. 16, ¶ 82 ("The defendants [Dr. Lewnau, Dr. Fitzgerald, and Dr. Gillis] then informed the [P]laintiff that because of this action [*i.e.*, suggesting that Major's behavior was similar to Baker's and giving Major Walker's contact information ], that she was being discharged from the clinical practicum at [Sage].").

Plaintiff's allegations further demonstrate that she suffered no adverse action by Sage (or Southern), especially where Plaintiff's allegations show that she was given full credit for all clinical hours worked at Sage, all allegedly retaliatory actions were reversed by Southern, and she ultimately graduated from Southern with a degree in her field of study.[88] Southern formed a committee to investigate her complaints;[89] Southern provided Plaintiff with a human resources representative for every meeting with allegedly hostile professors;[90] the committee chair assured Plaintiff that the actions taken against her by the professor-defendants would not be upheld;[91] Vice Chancellor Ammons ensured that Plaintiff remained enrolled in classes pending her grievance appeal;[92] and Ammons sided with Plaintiff and overturned the actions taken by professors (and awarded Plaintiff credit for all clinical hours worked at Sage), allowing her to graduate and earn her degree.[93] Furthermore, Plaintiff alleges that those faculty members who retaliated against her were demoted, have resigned, or are otherwise no longer employed by Southern.[94]

Because Plaintiff's allegations, which are accepted as true at this stage of litigation, undermine the suggestion that an appropriate person at Sage knew of the allegedly discriminatory or retaliatory conduct or that Sage responded to her complaints with "deliberate indifference," and because Plaintiff did not suffer any material adverse action, it is recommended that Plaintiff's

---

[88] *See e.g., Cole v. City of Port Arthur*, No. 13-176, 2014 WL 3513366, at *10 (E.D. Tex. July 16, 2014); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009); *Ariel B.*, 428 F.Supp.2d at 666.

[89] Rec. Doc. 16, p. 19, ¶¶ 52–53.

[90] *Id.,* ¶¶ 116–17.

[91] *Id.,* ¶¶ 123–25.

[92] *Id.,* ¶¶ 139–42, 169, 171–73.

[93] *Id.,* ¶¶ 177–78, 190. (Plaintiff alleges that Southern gave her "the relief she sought. 1. Removing the grade 'F' for the class 2. Approval of all the clinical hours worked in Fall 2017-Spring 2018."). *Id.* at ¶ 178.

[94] *Id.,* ¶¶ 163, 192.

Title VI retaliation claim against Sage be dismissed with prejudice.

### D.    ADA Retaliation Claim

Plaintiff also argues that she has asserted a retaliation claim under the ADA. The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[95] The ADA also protects individuals from retaliation for opposing any act that is illegal under the ADA or for participating in any investigation, proceeding or hearing under the ADA.[96] The elements of a retaliation *prima facie* case are: (1) a protected activity; (2) an adverse action; and (3) a causal connection between the two.[97]

Not only has Plaintiff wholly ignored these elements, she does not allege any retaliatory conduct or adverse action by Sage. According to Plaintiff's allegations, to the extent any retaliation occurred, it was done by Southern employees, not Sage (or its employees). Moreover, her allegations demonstrate that any alleged retaliatory conduct was later reversed by Southern. As set forth above, Plaintiff received full credit for all clinical hours she worked at Sage. Her rights were protected by Southern as she appealed her grievance and every action of which she complained was reversed. Plaintiff ultimately graduated from Southern with a degree in her field of study. Plaintiff suffered no adverse action (by Sage or Southern) for purposes of this claim where all initial adverse actions were reversed.[98]  Accordingly, it is recommended that Plaintiff's ADA retaliation claim be dismissed with prejudice.

---

[95] 42 U.S.C. § 12132.

[96] 42 U.S.C. § 12203.

[97] *Ariel B. et rel. Deborah B. v. Fort Bend Independent School Dist.*, 428 F.Supp.2d 640, 665 (S.D. Tex. 2006) (citation omitted).

[98] *See e.g., Cole*, 2014 WL 3513366, at *10; *Stewart*, 586 F.3d at 332 (5th Cir. 2009); *Ariel B.*, 428 F.Supp.2d at 666.

### E.    Plaintiff's "Respondeat Superior" Claim

Plaintiff argues in her opposition memorandum that, under the "law governing Respondent Superior," Sage is liable for all "adverse actions" that happened to Plaintiff because of the conduct of Sage's alleged employees, Baker and Major.[99] Plaintiff also argues that Baker and Major "use[d] the authority  and responsibilities [that were given to them by Sage] to devise a scheme to derail the plaintiff and with the plan caused injuries to the [P]laintiff beyond repair."[100] Because of this, Plaintiff surmises that Sage is liable for the "adverse actions" that happened to her because "[t]he adverse actions are the fruits of the derailing scheme and retaliation against Plaintiff."[101] Plaintiff's claim against Sage under a theory of *respondeat superior* fails for multiple reasons.

#### 1.    Plaintiff Did Not Allege a *Respondeat Superior* or Vicarious Liability Claim in her Amended Complaint

The allegations and facts argued in Plaintiff's opposition memorandum are not found in her Amended Complaint, and a party cannot amend pleadings through opposition memoranda. "[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."[102] The Fifth Circuit has held that "[g]enerally, a new claim or legal theory raised in response to a dispositive motion should be construed as a request for leave to amend the complaint, and the district court should determine whether leave should be granted."[103] Here, Plaintiff presents no argument as to why she should be allowed to amend her complaint a second time, nor

---

[99] R. Doc. 45, pp. 12-13.

[100] *Id*. at p. 13.

[101] R. Doc. 45, p. 13.

[102] *Becnel v. St. Charles Par. Sheriff's Office*, No. 15-1011, 2015 WL 5665060, at *1 n.3 (E.D. La. Sept. 24, 2015) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig*., 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (collecting cases)). Because a Rule 12(b)(6) motion tasks the Court with "assess[ing] the legal sufficiency of the complaint," a court should not consider allegations that appear for the first time in plaintiffs' briefing. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc*., 702 F.3d 794, 806 (5th Cir. 2012).

[103] *Pierce v. Hearne Ind. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (citing *Stover v. Hattiesburg Pub. Sch. Dist*., 549 F.3d 985, 989 n. 2 (5th Cir. 2008)).

has she presented any argument as to why an amendment would not be futile. The Court previously denied Plaintiff's request to file a second amended complaint.[104] Moreover, the Court explained in its Ruling on Dr. Rami's Motion to Dismiss[105] that Plaintiff has already once amended her Complaint and did not seek leave to amend in her opposition, and that further attempts to amend would be futile as a matter of fact and law.[106]

### 2. Plaintiff's Claims Against Sage Relating to Major's Actions

Plaintiff seeks to hold Sage vicariously liable for the actions of Major, its employee who allegedly supervised Plaintiff during her clinical practicum at Sage. Plaintiff's claims against Major and, as a result, Sage, fail for the following reasons.

First, Plaintiff asserted a plethora of claims against Major in her Complaint,[107] but Plaintiff was unsuccessful in her attempts to serve Major.[108] Later, Plaintiff filed her Amended Complaint, which still named Major as a defendant.[109] Over one year has elapsed since the filing of the Amended Complaint. No summons or service information is in the record as to Major on the Amended Complaint.[110] Major has not made an appearance, and no default has been entered against her. Accordingly, it is recommended that all Plaintiff's claims against Major be dismissed

---

[104] R. Doc. 56.

[105] R. Doc. 21.

[106] R. Doc. 84, p. 17, n. 93.

[107] R. Doc. 16. Plaintiff asserted the same claims against Major as she did against Baker and Dr. Rami, Dr. Gillis, Dr. Lewnau, Dr. Fitzgerald, and Moland, all of which have been dismissed or recommended for dismissal. *See, e.g.*, R. Docs. 84, 85.

[108] R. Doc. 14.

[109] R. Doc. 16.

[110] The only service information in the record as to Major is related to the original Complaint and states that the summons on the original Complaint was returned unexecuted. R. Doc. 14.

on the Court's own motion under Local Civil Rule 41 due to Plaintiff's failure to prosecute her claims against Major.[111]

Second, as the Court has explained in other Rulings in this case, there is no individual liability under Title VI, Title VII, Title IX, and the ADA and RA.[112] Further, the Court has already considered Plaintiff's allegations related to Major's conduct in relation to Plaintiff's claims against Sage, and it recommended the dismissal of Plaintiff's claims against Sage under Title VI and the ADA for the reasons stated above.[113] Plaintiff's vicarious liability claims against Sage for alleged violations of these statutes fail for those same reasons.

Third, Plaintiff's sole remaining claim for which Plaintiff seeks to hold Sage vicariously liable is her state law defamation claim against Major. Both federal and state courts in Louisiana have held that, "[t]o maintain a defamation action under Louisiana law, a plaintiff must prove the following elements: '(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.'"[114] If any single element of the tort is lacking, the cause of action fails.[115] Further, "'[t]he fault requirement is generally referred to in the jurisprudence as malice, actual or implied.'"[116]

---

[111] The version of Local Civil Rule 41(b)(1), in effect at the time Plaintiff filed suit, provided, in part: "A civil action may be dismissed by the Court for lack of prosecution as follows: (A) Where no service of process has been made within 120 days after filing of the complaint…"

[112] *See, e.g.*, R. Docs. 83, 84, 85.

[113] Additionally, the Court recommended the dismissal of Plaintiff's claims against Sage under Title VII, Title IX, and the ADA and RA as abandoned, which, when combined with the dismissal of her Title VI and ADA retaliation claims, results in the dismissal of all Plaintiff's claims against Sage.

[114] *Schmidt v. Cal-Drive International, Inc.*, 240 F.Supp.3d 532, 542 (W.D. La. 2017) (quoting *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 674 (La. 2006); *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 181 (5th Cir. 2009)).

[115] *Id.* at 542 (citing *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004).

[116] *Id.* (quoting *Kennedy* at 674).

Plaintiff has not presented any allegations which attribute any allegedly defamatory statement made about Plaintiff to Major (or any other employee of Sage). To the extent Plaintiff has ostensibly asserted a defamation claim against Major through allegations against "the other defendants" in Paragraph 80 of her Amended Complaint, this generalized reference is insufficient to meet pleading requirements. Courts within the Fifth Circuit have routinely held that such generalized references to actions by all defendants are insufficient to state a claim.[117]  Further, Plaintiff does not allege whether Major made any defamatory statements; what those defamatory statements were; or to whom the defamatory statements were published. Plaintiff has also not put forth any factual allegations that any allegedly defamatory statements made by Major, assuming there were any, were made with actual malice. Finally, notwithstanding the other defamation elements, Plaintiff has failed to allege that she sustained any actual injury because of the alleged defamatory statements.[118] Plaintiff has failed to state a claim for defamation against Major. Accordingly, it is recommended that any defamation claim purportedly asserted against Major, or vicariously against Sage, be dismissed with prejudice.

---

[117] *See, e.g., Petri v. Kestrel Oil & Gas Properties, L.P.*, Civil Action Nos. 09-3994, 10-122, 10-497, 2011 WL 2181316, at * 6 (S.D. Tex. June 3, 2011) ("Plaintiffs have improperly lumped all Defendants together in the amended complaint, which is too vague and ambiguous to state a claim and is devoid of particularized and specific allegations against WGMS as to all allegations of negligence, gross negligence and/or malice."); *Howard v. ABN AMRO Mortg. Group, Inc.*, No. 13-543, 2014 WL 1237317, at * 3 (S.D. Miss. March 26, 2014) (explaining that "the Fifth Circuit has provided that '[w]here the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading.' It necessarily follows that the Plaintiff's conclusory allegations against all 'defendants' fail to state a claim upon which relief can be granted as to FHLB and Wells Fargo.") (quoting *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008) (citing *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 165–66 (5th Cir. 1999)).

[118] *See* R. Doc. 84, p. 16 (finding (1) that Plaintiff has failed to allege any injury resulting from the alleged defamatory statements "beyond a multitude of conclusory remarks," (2) that Plaintiff's allegations demonstrate that, despite the alleged defamatory statements, all actions taken against her were eventually reversed, and she was allowed to graduate and earn her degree in her chosen field, and (3) that Plaintiff has not plead any facts to suggest harm to her general reputation or that the alleged defamation has limited her job opportunities.) These findings are equally applicable to Plaintiff's claims against Major and Sage here.

### 3.    Plaintiff's Claims Against Sage Relating to Baker's Actions

Plaintiff also seeks to hold Sage vicariously liable for the actions of Baker, who Plaintiff alleges was an employee of Sage in addition to being the Director of Clinical Education for Southern.[119] Specifically, Plaintiff alleges in her opposition memorandum that she learned "[d]uring the Discovery Process…that Defendants (Leigh Ann Baker & Amelia Major) were employees of Care Plan Oversight, LLC [a]t the times of the alleged actions."[120] This is a legal conclusion couched as a factual allegation by Plaintiff which the Court is not bound to accept as true when deciding Sage's Motion to Dismiss.[121] Nonetheless, even if accepted as true, Plaintiff's claim against Sage under a theory of *respondeat superior* relating to Baker's actions while allegedly employed by Sage still fails because the Court previously dismissed all federal and state claims asserted by Plaintiff against Baker in both her official and individual capacities.[122] "A *respondeat superior* claim against an employer 'is a derivative claim arising solely out of the negligent conduct of its employee acting within the scope of employment, and thus, the vicarious liability claim itself is extinguished when the solely negligent employee is released.'"[123]  Because all claims against Baker have been dismissed, Sage cannot be liable for Baker's actions under a theory of *respondeat superior*. Accordingly, it is recommended that all claims against by Plaintiff against Sage under a theory of *respondeat superior* relating to Baker's action be dismissed with prejudice.

---

[119] *See* R. Doc. 16, ¶ 7.

[120] R. Doc. 45, p. 2.

[121] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

[122] *See* R. Doc. 85.

[123] *Covington Specialty Ins. Co. v. Croft Package Store, LLC*, No. 18-222, 2020 WL 853542, at *1 (citation omitted).

### III.    CONCLUSION

For the reasons set forth herein, **IT IS RECOMMENDED** that the Motion to Dismiss,[124] filed by Care Plan Oversight, LLC d/b/a Sage Rehabilitation Hospital be **GRANTED** and Plaintiff's claims against Sage **DISMISSED WITH PREJUDICE**.

**IT IS ALSO RECOMMENDED** that Plaintiff's claims against Amelia Major be dismissed on the Court's own motion pursuant to Local Civil Rule 41(b)(1)(A) and/or Local Civil Rule 41(b)(1)(B) with reinstatement of the claims against Major permitted upon a showing of good cause within thirty (30) days.  There is no service information in the record as to Major, nor has Major appeared.

Signed in Baton Rouge, Louisiana, on March 3, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[124] R. Doc. 44.

20